AFFIRMED in part, VACATED in part, and REMANDED for further proceedings.

**JACK H. BROWN & COMPANY, INC.,**
**d/b/a Signgraphics, Plaintiff–Appellee,**

v.

**TOYS "R" US, INC.,**
**Defendant–Appellant.**

**No. 89–1143.**

United States Court of Appeals,
Fifth Circuit.

July 20, 1990.

Brian J. Hurst, William C. Scott, Jenkins & Gilchrist, Dallas, Tex., for defendant-appellant.

Durwood D. Crawford, Goins, Underkofler, Crawford & Langdon, Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG, GARWOOD and DAVIS, Circuit Judges.

GOLDBERG, Circuit Judge:

Jack H. Brown & Co., Inc., d/b/a Signgraphics ("Signgraphics"), brought this diversity action against Toys "R" Us, Inc. ("Toys") to recover damages for breach of contracts to purchase signs and mansards. Toys' defense relied on a written settlement agreement with Signgraphics ("the settlement agreement") that allegedly released Toys from liability under the sign and mansard contracts. At trial, Signgraphics introduced parol evidence to show that Toys failed to perform certain obligations, not contained in the written settlement agreement executed by the parties, that purportedly were part of that agreement. We find that parol evidence was admitted in error. We reverse.

## FACTS

For eight or nine years prior to 1985, Signgraphics supplied custom signs for Toys "R" Us retail stores. Typically, Signgraphics and Toys entered into annual contracts under which Signgraphics agreed to build and supervise installation of the signs Toys needed for any new stores opened during the year. After 1983, Toys also began contracting with Signgraphics for the construction of prefabricated "mansards," which are false-front, built-up roofs upon which the signs are mounted.

In 1985 Toys and Signgraphics had two agreements in effect: one for the construction of ten mansards ("the 1984 contract") and one for signs ("the 1985 contract"). Early in 1985, a dispute arose between Signgraphics and Toys over late payment of invoices. Sometime in March, Toys requested shipment of one of the completed mansards, but Signgraphics refused to ship the mansard until Toys made some payment on the disputed invoices. In response to Signgraphics' refusal to ship the mansard Toys cancelled both the 1984 and 1985 contracts via telegram on April 1, 1985.

In a letter dated April 16, 1985, Signgraphics acknowledged the cancellation and demanded payment from Toys of all money owed under the contracts and for lost profits. Signgraphics also filed a lawsuit in the Northern District of Texas on April 22, 1985, alleging that Toys breached the 1984 and 1985 contracts, and seeking damages for all outstanding amounts owed on completed work plus lost profits from work that would have been performed had the contracts not been cancelled. On April 23, 1985, James Markham, Director of Industrial Buying for Toys, along with several other Toys representatives, travelled to Dallas to meet with representatives from

Signgraphics. Markham met individually with Jack R. Brown, Signgraphics' owner and president, in an attempt to resolve the conflict between the two parties. As a result of this meeting, Markham and Brown reached an agreement on the various disputes that existed between their respective companies.

On April 29, 1985, Markham sent Brown a letter summarizing the agreement reached during the April 23 meeting.[1] Among other things, the letter indicated that Signgraphics would continue as the sign vendor for ten Toys "R" Us stores. The letter stated that except for these ten stores, the remainder of the 1985 contract

1. The full text of Markham's letter is as follows:

Dear Jack:

In accordance with our meeting on Tuesday, April 23, 1985, I am enclosing herewith the following checks, covering the invoices described thereon:

| | | |
|---|---|---|
| Toys "R" Us | | |
| Check No. 4064434 — | $23,110.10 | |
| Check No. 4064822 — | 22,972.38 | |
| Check No. 4064134 — | 9,574.50 | |
| Total — Toys "R" Us | | $55,656.98 |
| Kids "R" Us | | |
| Check No. 0000493 — | $12,628.12 | |
| Check No. 0000736 — | 435.60 | |
| Total — Kids "R" Us | | 13,063.72 |
| Total — All Checks | | $68,720.70 |

The enclosed checks are being delivered to you with the understanding that you will complete the manufacture of our signs for the following ten (10) Toys "R" Us locations only, and that our contract with you for the remainder of our 1985 signs is terminated with no further liability on the part of either party:

1. Lanham, MD
2. Grand Chute (Appleton), WI
3. Chicago, IL (87th & Dan Ryan)
4. Chicago, IL (Cermak & Rockwell)
5. Richmond, CA
6. Bell Gardens, CA
7. Plano, TX
8. Humble, TX
9. So. DeKalb, GA
10. Gwinnett, GA

All signs for the foregoing locations are to be manufactured in accordance with the specifications provided under our existing contract.

It is further understood between us that you have completed and we have paid in full for the manufacture of four (4) mansards, all of which are currently in your possession. You will release those mansards to us and when we request same we will arrange for their pick-up (at our expense), without any further cost or charge by you. Any contract which we may have for the manufacture of any additional mansards is terminated with no further liability to either party. (With respect to the mansard and signs for our Lanham, MD location, you will release those to us as soon as we have arranged for their pick-up).

Finally, you are to furnish us as soon as possible with all outstanding waivers of lien from all subcontractors of yours who have performed installation and other work in connection with our sign program.

I trust you will agree that the foregoing accurately reflects our understanding. Accordingly, please indicate your acceptance hereof by signing, dating and returning to me the enclosed copy of this letter.

Very truly yours,

TOYS "R" US, INC.

JIM MARKHAM
Director of Industrial Buying

was "terminated with no further liability on the part of either party." Markham's letter also indicated that Signgraphics had been paid in full for four mansards, and that any contract for additional mansards was "terminated with no further liability to either party." In closing, Markham wrote, "I trust you will agree that the foregoing accurately reflects our understanding."

Brown received the letter, signed and dated a copy as of April 30, 1985, and returned the copy to Markham along with an addendum.[2] The addendum generally referred to the parties' understanding about the disposition of stored materials, shipping costs and procedures, and miscellaneous service and repair work. The addendum made no reference to the release, or to any other agreements between the parties other than their "past practice" with regard to services and repairs. Both parties performed in accordance with the terms set out in the April 29, 1985 letter from Markham, as supplemented by Brown's April 30, 1985 addendum, for the remainder of the year.

In November, 1985, Signgraphics submitted bids for Toys' 1986 sign program. The bids were unsuccessful. Brown wrote to Markham expressing surprise over the fact that Signgraphics had not been selected as a sign vendor for 1986. According to Brown, the April, 1985 settlement agreement was "based on [Markham's] representation that [Signgraphics] would be a supplier in 1986." Specifically, Brown asserted that in exchange for releasing Toys from Signgraphics' lost profits claim, Markham "promised" at the April 23 meeting that Signgraphics "would be a major sign vendor for Toys R Us in 1986, so that [Signgraphics] could recoup these claims in that manner." Because Toys did not select Signgraphics as a sign vendor for 1986, Brown reasserted his earlier claim for lost profits.

In a letter dated March 4, 1986, Markham denied making "any promises, representations or agreements, orally or in writing, that [Signgraphics] would be 'a major sign vendor' or do *any* sign work for Toys "R" Us in 1986." Maintaining that the April 29, 1985 settlement agreement effectively released Toys from further liability under the 1984 and 1985 contracts, Markham rejected Signgraphics' demand for payment of lost profits.

## PROCEEDINGS BELOW

Signgraphics filed a diversity action in the Northern District of Texas, seeking $135,000 in lost profits from Toys' alleged breach of the 1984 and 1985 contracts. Additionally, Signgraphics sought to recover $4,950 for work it performed in accordance with the terms of the written settlement agreement. Toys admitted liability for this latter amount and the judgment entered upon it is not a subject of this appeal.

Toys' generally denied Signgraphics' claims, but did not dispute that it had cancelled the 1984 and 1985 contracts. Instead, Toys pleaded affirmative defenses of compromise and settlement, waiver, accord and satisfaction, and release. Toys' defenses relied primarily on the language of the written settlement agreement, which, Toys maintains, released it from any liability under the 1984 and 1985 contracts.

Signgraphics argued that the written settlement agreement did not contain all terms agreed to by the parties during their April 23, 1985 meeting. Furthermore, Signgraphics claimed that it only released Toys from liability under the 1984 and 1985 contracts in exchange for Toys' oral promise to make Signgraphics a "major sign vendor" in 1986. Signgraphics argued that Toys' breach of the alleged oral promise

**2.** The full text of Brown's April 30, 1985 addendum is as follows:

Dear Jim:

I would like for this letter to be an addendum to your letter of April 29, 1985 to me.

We have a few points that I had an understanding on that I would like to make in our agreement.

1) We are to forward all Kids "R" Us signs, partially built signs and unused materials to Philadelphia Sign Company and invoice you for whatever outstanding costs are involved.

2) I assume that mansards will be handled the same as they were in 1984, where we load your trucks and invoice you for that expense.

3) All miscellaneous services, replacements, or repair work called in to us will be handled as in the past.

Yours sincerely,

Jack H. Brown

entitled Signgraphics to sue for and recover its lost profits under the original contracts cancelled by Toys.

At trial, Toys filed a Motion in Limine to prohibit Signgraphics from introducing parol evidence of the alleged oral promise. The district court denied the motion. The court also overruled Toys' objection to the introduction of parol evidence during the trial, and admitted Brown's testimony of the oral promise, allegedly made by Markham during the April 23 meeting, that Signgraphics would be a "major sign vendor" in 1986.

The jury returned a verdict in Signgraphics' favor of $123,054 on the issue of lost profits. In response to specific interrogatories, the jury found that Markham's April 29 letter, as amended by Brown's April 30 addendum, did not contain all material terms of the settlement agreement reached by the parties during the April 23, 1985 meeting. The jury also found that the writings did not release Toys from liability for lost profits based on the terminated 1984 and 1985 contracts. The district court entered judgment on the verdict, and denied Toys' motion for a judgment n.o.v., or in the alternative, for a new trial.

## ISSUES

On appeal, Toys claims that the district court erred in admitting parol evidence of the alleged oral promise to vary the unambiguous terms of the written settlement agreement. Alternatively, Toys argues that the district court erred in denying the motion for a judgment n.o.v. because Signgraphics' claim was based on an oral promise for the sale of goods, and thus barred by the statute of frauds. Toys further contends that it was entitled to a judgment n.o.v. because the alleged oral promise was too indefinite, as a matter of law, for the district court to enforce. Finally, Toys claims that there was insufficient evidence to support the jury's finding that Signgraphics' claim was not barred by compromise and settlement, waiver, accord and satisfaction, and release.

We agree that the district court improperly admitted parol evidence of the alleged oral promise. We also agree that the written settlement agreement unambiguously released Toys from liability for damages under the 1984 and 1985 contracts, and that no evidence in the record other than the improperly admitted parol evidence can support the jury's finding to the contrary. Because evidence of Toys' alleged oral promise is barred by the parol evidence rule, we need not determine whether it is also barred by the statute of frauds, or whether the promise was too indefinite to be enforced.

## DISCUSSION

### I. Parol Evidence

 We are bound in this diversity case to apply the parol evidence rule as a Texas court would. *Harville Rose Svc. v. Kellogg Co.*, 448 F.2d 1346, 1349 (5th Cir. 1971) *cert. denied* 405 U.S. 987, 92 S.Ct. 1248, 31 L.Ed.2d 453 (1972). In *Hubacek v. Ennis State Bank* [3], the Texas Supreme Court stated that "[w]hen parties have concluded a valid integrated agreement with respect to a particular subject matter, the [parol evidence] rule precludes the enforcement of inconsistent prior or contemporaneous agreements." [4] It is well settled that written agreements are presumed to be integrated. *N.K. Parrish, Inc. v. Southwest Beef Indus. Corp.*, 638 F.2d 1366, 1368–69 (5th Cir.) *cert. denied* 454 U.S. 1047, 102 S.Ct. 587, 70 L.Ed.2d 488 (1981) (citing *Hubacek*). Once the parties have reduced their agreement to writing "they are presumed to have selected from [prior] negotiations only the promises and agreements for which they choose to be bound." *Harville Rose, supra*, 448 F.2d at 1349.

In its memorandum opinion, the district court stated that Signgraphics was nevertheless free to rebut this presumption by "showing that the written agreement was ambiguous or incomplete." The court admitted parol evidence of Toys' alleged oral promise into evidence for this purpose, and submitted the question of completeness to

---

3. 317 S.W.2d 30 (Tex.1958).

4. *Id.* at 32 (citations omitted).

the jury. Based on the jury's findings, the court concluded that "the parol evidence rule would have applied but for [Signgraphics'] proof" that the settlement agreement executed by Toys and Signgraphics was incomplete.[5]

On appeal, Toys argues that the district court, not the jury, should have determined in the first instance whether the written settlement agreement was complete. Toys further contends that the settlement agreement unambiguously stated the terms agreed to by Toys and Signgraphics at the April 23, 1985 meeting, and that parol evidence of an alleged oral promise to make Signgraphics a "major supplier" in 1986 contradicts the settlement agreement's unambiguous language. We agree with the latter argument, and for reasons set out more fully below, hold that parol evidence was improperly admitted in this case.

## A. Incomplete Agreements

■ For a court to determine that a written agreement is incomplete, it must decide: (1) that the writing is facially incomplete and requires extrinsic evidence to clarify, explain or give meaning to its terms, *Magnolia Warehouse & Storage Co. v. Davis & Blackwell*, 108 Tex. 422, 195 S.W. 184 (1917); *M.C. Winters, Inc. v. Cope*, 498 S.W.2d 484 (Tex.Civ.App.1973); or (2) that when viewed in light of the circumstances surrounding its execution, the writing does not appear to be the complete embodiment of the terms relating to the subject matter of the writing. *See Garner v. Redeaux*, 678 S.W.2d 124, 128 (Tex.Ct.App.1984); *Warren Bros. Co. v. A.A.A. Pipe Cleaning Co.*, 601 S.W.2d 436, 439 (Tex.Civ.App.1980). In either instance, the trial court must make some threshold determination as to the incompleteness of the document before admitting parol evidence.

■ We believe the district court made such a threshold determination in this case. During pre-trial proceedings, Toys filed a

Motion in Limine with supporting brief asking that parol evidence be excluded from the evidence admitted at trial. Signgraphics filed a brief in opposition to the motion. Signgraphics claimed that the settlement agreement did not embody the entire agreement of the parties. In support of its claim, Signgraphics referred to two agreements admittedly made during the April 23, 1985 meeting between Brown and Markham that were not mentioned in the settlement agreement. These promises pertained to the payment of outstanding invoices for work Signgraphics had already performed, and to Toys' agreement to invite Signgraphics to bid on the 1986 sign program.

Signgraphics also claimed that the settlement agreement was facially incomplete. Signgraphics pointed out that the settlement agreement did not specify the number or type of signs required for the ten Toys "R" Us stores yet to be completed. In addition, Brown's April 30 addendum stated that service and repair work would be handled "as in the past." Signgraphics reasoned that had disputes arisen on either of these issues, parol evidence would have been necessary to explain these terms. Based on the foregoing, we believe that the district court could properly have concluded that the settlement agreement was incomplete.

## B. Inconsistent Agreements

A finding of incompleteness, however, does not end our inquiry. An agreement might be incomplete in some respects but perfectly clear and complete in others. Extrinsic evidence necessary to explain or give meaning to an agreement cannot be admitted to vary or contradict those portions of the agreement that are complete and unambiguous. *Don Drum Real Estate Co. v. Hudson*, 465 S.W.2d 409, 413 (Tex.Civ.App.1971). Therefore, we must look to the particular parol evidence at issue and the purpose for which it was offered to see if it falls within an exception to the parol evidence rule.

---

5. The court based its conclusion on the jury's response to the first jury interrogatory:

 Do you find that the parties did *not* intend to express all the material terms of their April 23, 1985 agreement in plaintiff's exhibit 38

(letter from Markham to Brown dated April 29, 1985) and plaintiff's exhibit 39 (letter from Brown to Markham dated April 30, 1985)?
ANSWER: _____ YES

■ Under Texas law, parol evidence is admissible to clarify, explain, or give meaning to a writing that is facially incomplete, but only insofar as the evidence does not vary or contradict those terms of the writing that are complete and unambiguous. *First Victoria Nat'l Bank v. Briones*, 788 S.W.2d 632, (Tex.Ct.App.1990); *Patterson v. Patterson*, 679 S.W.2d 621, 625 (Tex.Civ. App.1984); *Warren Bros. Co. v. A.A.A. Pipe Cleaning Co., supra*, 601 S.W.2d at 438–39. Similarly, where the written agreement does not include the entire agreement of the parties parol evidence is admissible to show collateral agreements. *Hubacek, supra*, 317 S.W.2d at 32. Here again, parol evidence is admissible only insofar as it does not vary or contradict the terms of the writing. *N.K. Parrish, Inc., supra*, 638 F.2d at 1369; *Hubacek, supra* at 32–34; *see also Don Drum, supra*, 465 S.W.2d at 413 (existence of collateral agreements does not expose written agreement to attack by extrinsic evidence).

■ Signgraphics seeks to introduce parol evidence of Toys' alleged promise to make Signgraphics a "major supplier" in 1986. Evidence of the alleged promise was not offered to clarify, explain or give meaning to any portion of the written settlement agreement. The only term of the settlement agreement Signgraphics disputes is the release from liability under the 1984 and 1985 contracts. The district court found, and we agree, that the settlement agreement "unambiguously released [Toys] from further liability on the 1985 sign contracts and from liability on any contracts for mansards." The settlement agreement's release language was not so incomplete that extrinsic evidence was required to give it meaning. *See Fort Worth Nat'l Bank v. Harrell*, 544 S.W.2d 697 (Tex.Civ. App.1976).

### C. Collateral Agreements

■ Furthermore, we cannot agree that Toys' alleged oral promise was collateral to the written settlement agreement. With respect to proof and enforcement of collateral agreements, the *Hubacek* court adopted the rule stated in the Restatement of the Law of Contracts, Vol. 1, § 240:

(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

(a) is made for separate consideration, or

(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract.

The promise alleged by Signgraphics that Toys would make Signgraphics a "major supplier" in 1986 simply does not meet the standard recited in *Hubacek*. First, no evidence was presented that Toys' alleged oral promise was given for separate consideration. In fact, Signgraphics steadfastly maintains that it released Toys from liability under the 1984 and 1985 contracts in exchange for Toys' promise to make Signgraphics a "major supplier" in 1986.

Second, we are unconvinced that a promise to provide future business is one "as might be normally be made as a *separate* agreement by parties situated as were the parties to the written contract." In its brief and during oral argument before this court, Signgraphics repeatedly pointed out that most of its previous dealings with Toys were based on oral agreements. It is noteworthy, however, that this particular agreement was reached in the midst of a quarter-million dollar dispute, refusals to perform, cancelled contracts, and a pending lawsuit. It is also significant that Toys, through Markham's April 29 letter, memorialized the terms of the settlement agreement. Markham's letter contained explicit language releasing Toys from further liability on the 1984 and 1985 contracts. The next day, and just one week after filing a lawsuit against Toys, Signgraphics signed and returned a copy of Markham's letter with only minor modifications. If it wanted to incorporate some reference to the alleged oral promise, Signgraphics could simply have made its acceptance "subject to our understanding on future business." Instead, Signgraphics accepted the terms of Markham's letter without challenging

the release language in any way.

In light of these circumstances, we find that the alleged oral promise is not one that "might naturally be made as a separate agreement" by parties situated as were Toys and Signgraphics.[6] It is implausible that Toys would have used explicit, unconditional release language in Markham's letter, while orally agreeing to make the release contingent on some vague guarantee of future business. Nor can we believe that the alleged oral agreement is one that would be made separately by Signgraphics. This court recognizes that even the most sophisticated businessmen often deal with each other informally and verbally, but in circumstances such as these, even an unsophisticated businessman (which Brown was not) would either have protested the unconditional release language or insisted on getting the alleged oral agreement in writing.

Moreover, it is clear that Toys' alleged oral promise is inconsistent with the unambiguous and unconditional release language contained in the settlement agreement. We note that Signgraphics' underlying suit is for breach of the 1984 and 1985 contracts, and that the settlement agreement unambiguously releases Toys from liability under these contracts. Signgraphics attempts to negate the release by proving, with parol evidence, that the release was given in return for a promise that is not mentioned in the settlement agreement. Where a written release is unambiguous, any attempt to prove that the release was signed in return for additional consideration not mentioned in the release violates the parol evidence rule. *Jeanes v. Hamby*, 685 S.W.2d 695 (Tex.Ct.App.1984).

Both the parol evidence rule and the doctrine of integration exist so that parties may rely on the enforcement of agreements that have been reduced to writing. If it were not for these established principles, even the most carefully considered written documents could be destroyed by "proof" of other agreements not included in the writing. The importance of these principles is well established in Texas law, and in contract law generally. True, Texas law recognizes a number of exceptions to the parol evidence rule. We believe, however, that these exceptions are carefully and narrowly crafted to permit a court to consider parol evidence only in certain well-defined circumstances. If it were otherwise, the exceptions would become the rule, and the general prohibition against parol evidence would cease to have any legal effect.

In the case at bar, parol evidence of Toys' alleged oral promise does not fall within any of the exceptions recognized by Texas law. The evidence was not introduced to explain or give meaning to any part of the written settlement agreement. Nor was the promise one that could rightfully be described as collateral to the written settlement agreement. Moreover, the alleged promise was inconsistent with the settlement agreement's clear and unambiguous release language. Therefore, we hold that parol evidence of the alleged oral promise was improperly admitted in this case.

## II. Statute of Frauds

Toys claims that the alleged oral agreement to make Signgraphics a "major sign vendor" in 1986 is barred by the statute of frauds. The only evidence Signgraphics offered to prove the existence of the oral agreement was parol. As we previously stated, however, the district court incorrectly admitted this evidence. Therefore, we need not address whether the alleged oral promise is also barred by the statute of frauds.

## III. Indefiniteness

Toys argues that the alleged oral agreement was too indefinite to be enforced. For the same reasons that we need not address the statute of frauds issue, it is unnecessary for us to address the question of indefiniteness.

## IV. Sufficiency of Evidence

■ In response to jury interrogatories, the jury found that the written settlement

---

**6.** *See Hubacek, supra,* 317 S.W.2d at 33–34.

agreement was not a compromise and settlement, accord and satisfaction, waiver, and release of Signgraphics' claims under the 1984 and 1985 contracts. In its motion for a judgment n.o.v. and again on appeal, Toys argued that the evidence presented at trial was insufficient to support these findings. Toys claims that the only evidence offered in support of these findings was Signgraphics' parol evidence of Toys' alleged oral promise. As we previously stated, the district court improperly admitted this evidence. Thus, we are faced with the question whether there is any competent evidence, other than the improperly admitted parol evidence, upon which reasonable jurors could have based their finding that the settlement agreement was not a release of Signgraphics' claims for lost profits under the 1984 and 1985 contracts. A careful review of the record reveals that there is not.

Markham's April 29, 1985 letter recites that it "accurately reflects [the] understanding" reached between Toys and Signgraphics at the April 23, 1985 meeting. The letter also states that both the 1984 and 1985 contracts are "terminated with no further liability to either party." Signgraphics argued at trial and on appeal that notwithstanding the unambiguous language of the settlement agreement, the release was contingent on an alleged oral promise of future business. However, parol evidence of this alleged promise cannot be used to alter the clear and unambiguous terms of the settlement agreement. Signgraphics makes no other allegation and offers no other evidence that would tend to invalidate the unqualified release. The jury's finding that Toys had made the oral promise, contrary to the plain language of the written settlement agreement, did not constitute a basis for disregarding the settlement and release and cannot support the judgment in Signgraphics' favor. *Cannon v. Pearson*, 383 S.W.2d 565, 569 (Tex.1964); *Fidelity–Southern Fire Insurance Co. v. Whitman*, 422 S.W.2d 552, 557 (Tex.Civ. App.1967).

## V. CONCLUSION

Signgraphics and Toys executed a valid settlement agreement that unambiguously released Toys from liability under the 1984 and 1985 contracts. Notwithstanding the release, Signgraphics sued Toys for damages allegedly caused by Toys' breach of these contracts. Signgraphics attempted to negate the effect of the release by introducing parol evidence of an oral promise allegedly given in return for the release. We hold that the trial court incorrectly admitted the parol evidence to vary the terms of the unambiguous written agreement, and that absent the improperly admitted parol evidence, there is no support in the record for the jury's finding that the settlement agreement did not release Toys from liability under the 1984 and 1985 contracts. The judgment of the district court is REVERSED.