Opinion filed August 9, 2007











 
 
  
 
 







 
 
  
 
 




Opinion filed August 9,
2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00359-CV 

                                                    __________

 

                            ISG STATE OPERATIONS, INC., Appellant

 

                                                             V.

 

          NATIONAL
HERITAGE INSURANCE COMPANY, INC., Appellee

 



 

                                         On
Appeal from the 250th District Court

 

                                                          Travis
County, Texas

 

                                                 Trial
Court Cause No. 95-11014 

 



 

                                                                   O
P I N I O N

 

ISG
State Operations, Inc. sued National Heritage Insurance Company, Inc. (NHIC)
contending that NHIC breached a contract and fraudulently made precontractual
and post-contractual misrepresentations.  The trial court entered a directed
verdict in NHIC=s
favor on ISG=s
fraudulent inducement cause of action, and the jury found for NHIC on ISG=s breach of contract and
common-law fraud claims.  We affirm.

                                                             I. 
Background Facts








NHIC,
an Electronic Data Systems (EDS) subsidiary, was responsible for managing the
State=s medicaid
program.  Medical service providers submitted claims to NHIC for processing. 
It verified the claim and paid the provider on the State=s behalf.  In 1992, NHIC signed a Memorandum
of Understanding with the Texas Department of Human Services and agreed to
participate in a program promoting Historically Underutilized Businesses
(HUBs).  ISG is a minority-owned business and was certified as a HUB.  In 1993,
NHIC contracted with ISG=s
parent company to study possible outsourcing opportunities.  Service providers
submitted claims on paper and electronically.  ISG recommended that paper and
electronic claims processing be outsourced and that it be the recipient of that
outsourcing.  In 1994, NHIC and ISG executed a contract that subcontracted
paper B but not
electronic B claim
processing to ISG.[1]  

Problems
soon developed.  As part of the Subcontract, 137 claims-handling employees were
transferred from NHIC to ISG. NHIC made a fixed contract payment to ISG at the
beginning of the month and a variable payment at the end of the month that was
based upon the month=s
actual claim count.  The claim count began decreasing, and NHIC=s end-of-the-month payment
decreased correspondingly.  This created financial difficulties for ISG.  On
more than one occasion, ISG failed to timely pay its employees.  NHIC advised
ISG that this was a breach of the Subcontract and requested a corrective action
plan.  ISG instead contacted the Texas Department of Health and complained that
NHIC=s greed and
manner of doing business was straining their future, that NHIC was acting out
of racial jealousy, and that NHIC was forcing it out of business.

ISG=s operations manager
resigned in May 1994 because of disagreements with ISG=s owner.  The replacement manager resigned in
September 1994.  Several other employees and supervisors resigned because of
work conditions.  After the departure of the second operations manager, ISG was
unable to meet the Subcontract=s
performance requirements.  NHIC sent ISG notices of default, and on August 25,
1995, NHIC terminated the Subcontract for failure to timely process claims.  








ISG
sued NHIC and alleged that it was fraudulently induced into executing the
Subcontract.  ISG alleged that NHIC represented that it would receive future
electronic claims work and that ISG detrimentally relied upon NHIC=s representations by
working on the Subcontract to the exclusion of all other work.  ISG also
asserted causes of action for common-law fraud and breach of contract.  The
trial court dismissed ISG=s
fraudulent inducement claim by directed verdict.  The trial court submitted ISG=s breach of contract and
common-law fraud claims to the jury.  The jury found against ISG, and the trial
court entered a take- nothing judgment in NHIC=s
favor.

                                                                       II. 
Issues

ISG
raises three issues on appeal.  First, it contends that the trial court abused
its discretion by concluding that the merger clause precluded ISG=s cause of action for
fraudulent inducement based on NHIC=s
precontractual representations.  Second, ISG argues that the trial court erred
by granting NHIC=s
motion for directed verdict.  Third, it claims that the trial court abused its
discretion by excluding evidence of precontractual representations by NHIC.

                                                                     III.
Analysis

A.  Did the
Trial Court Err by Granting a Directed Verdict on ISG=s Fraudulent Inducement
Cause of Action? 

 

1.  The
Trial Court=s
Rulings.

 

The
trial court held a pretrial hearing on the parties= motions in limine and granted NHIC=s motion to preclude
evidence of precontractual representations that were inconsistent with the
Subcontract=s merger
clause.[2]  After the
jury was selected, ISG asked the trial court to reconsider this ruling.  ISG
argued that it was not offering evidence of precontractual representations to
vary the terms of the Subcontract but to show that, both before and after the
Subcontract=s
execution, NHIC promised that ISG would receive a separate contract for
handling electronic claims.  The trial court expressed a concern over parol
evidence being used to vary the Subcontract=s
terms but indicated that ISG could offer evidence that NHIC had decided to give
ISG a contract for electronic claims handling.








The
following day, during a hearing to consider deposition testimony objections,
ISG re-urged its position that the Subcontract=s
merger clause did not preclude a cause of action for fraudulent inducement
based upon precontract representations.  The trial court reaffirmed its
decision that precontract representations were contractually excluded from
consideration and deferred any ruling on post-contract representations pending
the conclusion of ISG=s
case.  When ISG rested, NHIC moved for directed verdict on ISG=s fraudulent inducement
cause of action.  The trial court granted NHIC=s
motion noting: AI didn=t hear any evidence of
reliance because you were seeking benefit of the bargain.@[3]

2.  Standard of Review.

ISG
frames its first issue by arguing that the trial court erred when it held that
the Subcontract=s
merger clause precluded any fraudulent inducement claim for electronic claims
processing.  ISG=s 
issue correctly states the reason articulated by the trial court for its
ruling, but our review is necessarily broader. We must affirm the trial court=s judgment B even if its rationale is
erroneous B if it can
be supported on any basis.  Cano v. N. Tex. Nephrology Assocs., P.A., 99
S.W.3d 330, 339 (Tex. App.CFort
Worth 2003, no pet.).  Consequently, the burden on ISG is to show that no basis
supports the trial court=s
decision.  See McKelvy v. Barber, 381 S.W.2d 59, 62 (Tex. 1964).








A
directed verdict for a defendant is appropriate when the plaintiff does not
present evidence raising a fact issue essential to the plaintiff=s right of recovery or when
a plaintiff admits or the evidence conclusively establishes a defense to the
plaintiff=s cause of
action.  Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29
S.W.3d 74, 77 (Tex. 2000).  We consider only evidence supporting ISG=s case and disregard all
contrary evidence.  City of Keller v. Wilson, 168 S.W.3d 802, 823-26
(Tex. 2005).  We must decide if there is any evidence of probative value that
raises issues of fact on the material questions presented.  Bostrom Seating,
Inc. v. Crane Carrier Co., 140 S.W.3d 681, 684 (Tex. 2004).  If the
evidence rises to a level to allow reasonable and fair-minded people to differ
in their conclusions, it constitutes more than a scintilla of evidence, an
instructed verdict is improper, and the case must be reversed and remanded.  Coastal
Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 234 (Tex.
2004).  Where no evidence of probative force on an ultimate fact element exists
or where the probative force of the testimony is so weak that only a mere
surmise or suspicion is raised as to the existence of essential facts, an
instructed verdict is appropriate.  ITT Consumer Fin. Corp. v. Tovar,
932 S.W.2d 147, 160 (Tex. App.CEl
Paso 1996, writ denied).  

3.  ISG=s
Fraudulent Inducement Claim.

ISG
alleged that NHIC made a number of fraudulent misrepresentations to induce it
to enter into the Subcontract and to take a number of related actions.  To
establish a fraudulent misrepresentation, ISG was required to prove:

(1)        NHIC
made a material representation;

 

(2)        the
representation was false;

 

(3)        when
the representation was made, NHIC knew it was false or made it recklessly
without any knowledge of the truth and as a positive assertion;

 

(4)        NHIC
made the representation with the intent that ISG act upon it;

 

(5)        ISG
acted in reliance on the representation; and

 

(6)        ISG
thereby suffered injury.

 

Formosa
Plastics Corp. v. Presidio Eng=rs
& Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998).  Because ISG
alleged fraudulent inducement as opposed to common-law fraud, ordinary
detrimental reliance is insufficient.  Instead, ISG was required to show that
it was induced into executing a contract.  See Haase v. Glazner,
62 S.W.3d 795, 798 (Tex. 2001).[4]  








ISG=s fraudulent inducement
claim would normally bring the Subcontract=s
validity into question because a fraudulently induced party has not assented to
the agreement.  See Lyn-Lea Travel Corp. v. Am. Airlines, Inc., 283 F.3d
282, 289 (5th Cir. 2002).[5]  However, ISG
did not seek rescission of the Subcontract B
in fact its breach of contract claim was based upon it B and ISG conceded during oral argument that
there was no evidence that it would not have executed the Subcontract but for
NHIC=s representations
regarding electronic claims.  Rather, ISG is attempting to use fraudulent
inducement as a vehicle to recover the expected profits from a second,
unexecuted agreement.[6]  ISG told the
trial court that it was induced to sign the Subcontract with a promise that it Awould be given another
separate, distinct contract to handle electronic claims.@

Texas
courts have held that misrepresentations concerning future contracts can
support a fraud cause of action.  See, e.g., Hoechst Celanese Corp.
v. Arthur Bros., Inc., 882 S.W.2d 917 (Tex. App.CCorpus Christi 1994, writ denied).  In Hoechst,
the parties entered into a nine-month contract to perform maintenance services
at a chemical plant.  The contractor alleged that the plant owner
misrepresented its intention to award a long-term contract if the contractor=s level of service
improved, that it spent considerable sums in reliance on this promise, and that
it lost profits in other areas of operation because of the time spent focused
on the maintenance contract. The jury found for the contractor, and the court
found sufficient evidence supporting its liability findings and an
out-of-pocket damage award.  Id. at 882, 928.  The court also held that
lost profits were recoverable B
so long as they were not speculative and were traceable directly to the fraud B but found insufficient
evidence supported their award in this case.  Id. at 929.








ISG=s damage model exceeds the Hoechst
contractor=s claim
because it does not seek profits collaterally lost due to underlying events,
but the profits it expected to receive from a future contract.[7]
ISG argues that it was entitled to seek either out-of-pocket or
benefit-of-the-bargain damages and that benefit-of-the-bargain damages can
include reasonably certain lost profits and points to evidence that it
anticipated receiving 18.4 million dollars per year from an electronic claims
contract.  However, ISG has not cited, and in our research we have been unable
to locate, a case allowing lost profits for an unexecuted contract based upon a
fraudulent inducement claim.  When lost profits were awarded, they were
attributable to the fraudulently induced contract.  For example, in Formosa
Plastics, 960 S.W.2d 41, a contractor submitted a bid based upon
representations contained in a bid package.  Many of these representations were
false, and there was evidence that the contractor knowingly made them with the
intention of inducing the contractor to enter into a contract at a low bid
price.  Id. at 48.  The court held that the contractor could recover
tort damages for a fraudulent inducement claim but only for the profits that
would have been made if the bargain had been performed as promised.  Id.
at 47, 50.  The court remanded the case for a new trial because it found that
the contractor=s
damage testimony was speculative.  The contractor developed a damage model
based upon what he would have bid had he known the truth.  The court held that
this was improper.  The contractor could not unilaterally develop a new
contract but was required to conform his damages to the actual facts because
the benefit-of-the-bargain measure of damage does not compensate for Aa hypothetical bargain
never struck.@  Id.
at 50.[8] 








Most
recently, in Baylor Univ. v. Sonnichsen, 221 S.W.3d 632, 636 (Tex.
2007), the court held that the viability of a fraud claim depends upon the
nature of the damages sought.  A fraud claimant can recover restitutional
damages for out-of-pocket expenses caused by the fraud; however, when seeking
benefit-of-the-bargain damages arising from a contractual relationship, a
statute-of-frauds defense that bars a contractual recovery also bars a fraud
recovery.  In Sonnichsen, the claimant=s
damages were the benefits he expected to receive from continued employment at
Baylor.  Because he had no enforceable employment contract, the court concluded
that his fraud claim was barred as well.  Id. 

The
supreme court=s
analysis makes clear that the basis of any fraudulent inducement claim must be
an executed contract that was procured by fraud, without which would not have
been executed, and the damages sought must flow directly from that
contract.  The absence of any testimony that the Subcontract would not have
been executed but for NHIC=s
misrepresentations is fatal to ISG=s
fraudulent inducement cause of action.  See Haase, 62 S.W.3d at 798. 
Moreover, because ISG=s
damage model was the profits it anticipated earning from an unexecuted
contract, it failed to offer evidence of recoverable damages.[9]
Issue two is overruled.

B.  Did the
Trial Court Err When It Excluded Evidence of Precontractual Representations Regarding
Electronic Claims?

 

1. Standard of Review.

The
admission and exclusion of evidence are committed to the trial court=s sound discretion. City
of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995).  An appellate
court must uphold the trial court=s
evidentiary ruling if there is any legitimate basis for the ruling.  State
Bar of Tex. v. Evans, 774 S.W.2d 656, 658 n.5 (Tex. 1989). The court should
not reverse a trial court for an erroneous evidentiary ruling unless the error
probably caused the rendition of an improper judgment. See Tex. R. App. P. 44.1; see also Gee
v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989).  In making
this determination, we review the entire record.  Alvarado, 897 S.W.2d
at 754.

2.  ISG=s
Offer of Proof.








The
trial court held that the merger clause precluded evidence of precontractual
representations.  ISG made an offer of proof and established that, if allowed,
EDS=s former national
minority business manager would testify that, during the Subcontract=s negotiations, he heard
NHIC=s Austin manager
tell ISG=s owner,
Kenneth Blow, that ISG would receive a separate contract for electronic
claims.  ISG also established that Blow would testify that NHIC represented to
him prior to the Subcontract=s
execution that he would receive a contract for electronic claims processing. 
ISG argues that the trial court erred by excluding this evidence because it was
not offered to contradict or vary the terms of the Subcontract but was offered
to establish a collateral undertaking.

3.  Analysis.

Generally,
the parol evidence rule circumscribes the use of extrinsic evidence when
interpreting an integrated document.[10]  Sun Oil
Co. (Delaware) v. Madeley, 626 S.W.2d 726, 731 (Tex. 1981).  When, as here,
a contract contains a merger or integration clause, the contract=s execution presumes that
all prior negotiations and agreements relating to the transaction have been
merged into the contract, and it will be enforced as written and cannot be
added to, varied, or contradicted by parol evidence.  Barker v. Roelke,
105 S.W.3d 75, 83 (Tex. App.CEastland
2003, pet. denied).  This rule, however, is not without exception.[11] 
A merger clause can be disregarded upon pleading and proof of ambiguity, fraud,
or accident.  Fish v. Tandy Corp., 948 S.W.2d 886, 898 (Tex. App.CFort Worth 1997, pet.
denied).  It also does not prohibit evidence of a collateral agreement.  Ledig
v. Duke Energy Corp., 193 S.W.3d 167, 179 n.10 (Tex. App.CHouston [1st Dist.] 2006,
no pet.).








The
Houston Court described a Acollateral
agreement@ as Aone that the parties might
naturally make separately, i.e., one not ordinarily expected to be
embodied in, or integrated with, the written agreement and not so clearly
connected with the principal transaction as to be part and parcel of it.@  Id.; see, e.g.,
Transit Enters., Inc. v. Addicks Tire & Auto Supply, Inc., 725 S.W.2d
459, 461 (Tex. App.CHouston
[1st Dist.] 1987, no writ).  Addicks filed suit alleging that Transit breached
a written contract for the purchase of a tow truck by failing to make its
scheduled payments.  At trial, Addicks was allowed to introduce evidence of an
oral agreement that this truck would be used exclusively to tow for and to
Addicks.  The court noted that these exclusive use agreements were common in
the industry, that the oral agreement did not vary or contradict the terms of
the written contract, and that it was offered only as a defense to Transit=s counterclaim for wrongful
sequestration.

The
application of the collateral agreement exception is a function of the
integration present in the executed contract.  If a contract is only partially
integrated, admission of an oral agreement not inconsistent with the terms of
the written contract comports with the parol evidence rule.  Dow, 35 S. Tex. L. Rev. at 464-65.  But, if a
contract is fully integrated, courts have been more stringent in their
application of the parol evidence rule.  See, e.g., Jack H. Brown & Co.
v. Toys AR@ Us, Inc., 906 F.2d 169
(5th Cir. 1990).[12]

In
Toys AR@ Us, the parties
contracted for the construction and installation of signs at new Toys AR@ Us stores.  A dispute arose, and the parties
met to discuss their disagreement.  During the meeting, the parties reached an
oral agreement.  A Toys AR@ Us representative
subsequently prepared a letter summarizing their agreement.  The letter
indicated that the sign vendor would continue as the vendor for ten stores but
that the remainder of the parties=
contracts would be canceled with no further liability to either party.  Id.
at 171-72.  The vendor=s
owner signed the letter and returned it with an addendum that referred to the
disposition of stored material, shipping costs and procedures, and
miscellaneous service and repair work.  The addendum made no reference to the
release or the presence of any other agreements.  Id. at 172.  

Subsequently,
the vendor submitted a bid for the Toys AR@ Us 1986 sign program. 
Toys AR@ Us did not select the
vendor=s bid, and the
vendor filed suit seeking lost profits for work covered by the prior
contracts.  The vendor claimed that the settlement agreement released Toys AR@ Us from liability under the prior contracts
in exchange for an oral promise from Toys AR@ Us to make it a major sign
vendor in 1986.  The vendor argued that, because it did not receive the 1986
contract, the release language was no longer binding.  Id. at 172-73.  








The
Fifth Circuit disagreed and wrote that, when parties reduce their agreement to
writing, Athey are
presumed to have selected from [prior] negotiations only the promises and
agreements for which they choose to be bound.@ 
Id. at 173.  The court recognized the collateral agreement exception but
held that an oral agreement for future business did not fall within it because
there was no evidence that the Toys AR@ Us promise to provide
future work was given for separate consideration, because a promise of future
business was not one that might normally be made as a separate agreement under
these circumstances, and because the vendor=s
position was inconsistent with the settlement agreement=s clear release language.  Id. at
175-76.[13]

We
believe the same situation is present here.  The Subcontract=s merger provision
unambiguously indicates that the agreement is fully integrated.  The agreement
provides:

This Subcontract,
including any Schedules and documents referred to in this Subcontract or
attached to this Subcontract and each Change Order, each of which is
incorporated herein, constitutes the entire and exclusive statement of the
agreement between the parties with respect to its subject matter and there are
no oral or written representations, understandings, or agreements relating to
this Subcontract which are not fully expressed herein.

 

ISG argues that
the merger provision is not applicable because the oral representations of a
future contract for electronic claims handling are not inconsistent with the
Subcontract and because the Subcontract and the promised contract dealt with
different subjects.  ISG has shown no separate consideration existed for the
promise to enter into a future contract,[14]
and the record does not support a finding that this is such an agreement as
might naturally be made as a separate agreement by parties situated as were ISG
and NHIC. 








The
Texas Supreme Court considered the enforceability of a contractual disclaimer
clause in Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 177-80
(1997).  The court held that a disclaimer-of-reliance provision in a settlement
agreement barred a fraudulent inducement cause of action because it negated any
detrimental reliance.  ISG argues that this case is inapplicable because it
dealt with a settlement release drafted to resolve an ongoing dispute.  We
disagree.  Nothing in the court=s
opinion suggests its analysis is limited to settlement agreements.[15] 
The court did spend considerable time discussing the parties= dispute and settlement,
but it did so in light of the requirement that A[t]he
contract and the circumstances surrounding its formation determine
whether the disclaimer of reliance is binding.@ 
Id. at 179 (emphasis added).

These
circumstances establish that the Subcontract was extensively negotiated by
sophisticated business people and that the negotiations extended beyond paper
claim processing.  Blow testified that the negotiations involved numerous
sessions over several days.  ISG was represented by experienced counsel, and
Blow was assisted by three knowledgeable business advisors.  Multiple drafts of
the agreement were prepared, and changes were made until just before the
Subcontract=s
execution.  ISG=s
original proposal recommended outsourcing both paper and electronic claims
processing.  During the negotiations, ISG requested an option to acquire
electronic claims processing if it met performance standards after six months. 
In light of these circumstances, it was reasonable for the trial court to
conclude that the merger clause=s
scope was broader than paper claim processing discussions and that the parties intended
the Subcontract to fully express their agreement.








Moreover,
ISG=s position does
present an inconsistency.  The merger clause is broadly written and disclaims
any other agreement relating to the Subcontract.  ISG=s original study considered
and recommended outsourcing both paper and electronic claims processing, and
both were discussed while negotiating the Subcontract.  The parties ultimately
contracted only for paper claims processing by ISG, but the Subcontract refers
to electronic claims processing and provides that these will be handled by
NHIC.  Consequently, the trial court could reasonably conclude that paper claim
processing and electronic claim processing were related.  To accept ISG=s position that the parties
engaged in considerable effort to negotiate and draft a written contract for
paper claims processing, represented in that contract that there were no other
agreements, and nonetheless still had an oral agreement potentially worth
millions of dollars for a future electronic claims contract, would require that
we significantly restrict the application of the parol evidence rule and the
integration doctrine.  As the Fifth Circuit noted:

Both
the parol evidence rule and the doctrine of integration exist so that parties
may rely on the enforcement of agreements that have been reduced to writing. 
If it were not for these established principles, even the most carefully
considered written documents could be destroyed by Aproof@
of other agreements not included in the writing.

 

Id. at
176.  This we cannot do.

The
trial court did not err when it excluded evidence of precontract
representations.  ISG=s
third issue is overruled.  Because we have also affirmed the trial court=s directed verdict on ISG=s fraudulent inducement
claim, this holding establishes that the trial court did not err in its
construction and application of the Subcontract=s
merger clause, and ISG=s
first issue is also overruled.

                                                                     IV.
Holding

The
judgment of the trial court is affirmed.

 

 

RICK STRANGE        

JUSTICE

August 9, 2007

Panel consists of:  Wright, C.J.,


McCall, J., and Strange, J.









[1]Hereinafter the ASubcontract.@





[2]The Subcontract included the following provision:

 

Entire
Agreement.  This Subcontract, including any Schedules and documents referred to
in this Subcontract or attached to this Subcontract and each Change Order, each
of which is incorporated herein, constitutes the entire and exclusive statement
of the agreement between the parties with respect to its subject matter and
there are no oral or written representations, understandings, or agreements
relating to this Subcontract which are not fully expressed herein.  The parties
agree that any other terms or conditions included in any shrink-wrap license
agreements, quotes, invoices, acknowledgments, bills of lading, or other forms
utilized or exchanged by the parties shall not be incorporated herein or be
binding unless expressly agreed upon in writing by authorized representatives
of the parties.





[3]The trial court had earlier noted that, if ISG acted in
response to NHIC=s representations, it could recover any actual expenses
incurred but that it could not recover for the benefit of a bargain that did
not result in a written contract.





[4]See also James L. Gang & Assocs., Inc. v. Abbott
Labs., Inc., 198 S.W.3d 434, 442 (Tex.
App.CDallas 2006, no pet.) (fraudulent inducement is a
particular species of fraud that arises only in the context of a contract and
requires an enforceable contract as part of its proof); John Wood Group USA,
Inc. v. ICO, Inc., 26 S.W.3d 12, 24 (Tex. App.CHouston [1st Dist.] 2000, pet. denied) (because
plaintiff never entered into a binding sales contract, it had no fraudulent
inducement cause of action); Coastal Corp. v. Atlantic Richfield Co.,
852 S.W.2d 714, 720 (Tex. App.CCorpus Christi
1993, no writ) (because buyer did not enter into binding contract with seller,
it did not rely on any representation to its detriment).





[5]See also Formosa,
960 S.W.2d at 46 (as a rule a party is not bound by a contract procured by
fraud); Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd., 896
S.W.2d 156, 162 (Tex. 1995) (a buyer is not bound by an agreement to purchase
that it was fraudulently induced to execute).





[6]We recognize that courts have held that a party can
assert fraudulent inducement as a defense to a breach of contract action and
still assert a counterclaim for fraud damages.  See, e.g., Anderson, Greenwood
& Co. v. Martin, 44 S.W.3d 200, 209-10 (Tex. App.CHouston [14th Dist.] 2001, pet. denied); Roberts v.
Tipton, 562 S.W.2d 921, 923 (Tex. Civ. App.CWaco
1978, writ ref=d n.r.e.).  Neither case, however, discusses what
damages are recoverable.  In Anderson, the jury found fraud but awarded
no damages.  In Roberts, the jury found that a fraudulent
misrepresentation was made but apparently was not asked to determine anything
other than contractual damages.





[7]We note, however, that ISG made the following offer of
proof:

 

If allowed to testify on the subject, Mr. Blow would
further testify that he relied upon the representations made to him by I B NHIC regarding their decision to give him electronic
claims for processing, by refraining from looking for business from sources
other than NHIC.  And that that was done at NHIC=s
specific request or instruction that he refrain from looking for business
elsewhere.

 

FOOTNOTE NO. 7 CONTINUED:

 

He also maintained personnel and staff and paid them
salaries in anticipation of those B the
personnel and staff assuming responsibilities directly related the handling and
processing of the promised electronic claims. 

 

This sounds much like the type of restitution damages
recoverable in Hoechst for common-law fraud, but we need not determine
if they are recoverable here because ISG disclaimed out-of-pocket damages
before both the trial court and this court.  See Haase, 62 S.W.3d at 799
(the measure of damages for fraud and fraudulent inducement are not
interchangeable).





[8]ISG similarly cites Cmty. Dev. Serv., Inc. v.
Replacement Parts Mfg., Inc., 679 S.W.2d 721, 725 (Tex. App.CHouston [1st Dist.] 1984, no writ), for the proposition
that benefit-of-the bargain damages may include reasonably certain lost
profits.  In this case, the parties contracted for the sale of residential
lots.  The jury found that Community Development breached the contract. 
Replacement Parts=s damages included the profits it anticipated making
from lot sales.  Because those sales were the subject of the contract and not
an expected future contract, this decision is consistent with our analysis.  





[9]We note also that ISG failed to offer sufficient
evidence either before the jury or by offer of proof to establish a lost
profits claim.  Lost profits are damages for the loss of net income to a
business and, broadly speaking, reflect income from lost business activity,
less expenses that would have been attributable to that activity.  Miga v.
Jensen, 96 S.W.3d 207, 213 (Tex. 2002).  ISG=s
evidence was its expected gross receipts.  





[10]An agreement is Aintegrated@ when Athe parties
thereto adopt a writing or writings as the final and complete expression of the
agreement.  An integration is the writing or writings so adopted.@  Restatement
(First) of Contracts ' 228 (1932).  A
contract may be fully or partially integrated.  A fully integrated contract is
a final and complete expression of all the terms in the agreement.  A partially
integrated contract is a full and complete expression of the terms contained in
that agreement but is not a final and complete expression of all the terms
agreed upon between the parties.  See David R. Dow, The Confused
State of the Parol Evidence Rule in Texas, 35 S. Tex. L. Rev. 457, 459-60 (1994).  The author notes that
parties will typically include a merger clause to express their intention of
creating a fully integrated document.  Id. at 460.





[11]The parol evidence rule also has exceptions.  Extrinsic
evidence is admissible to show (1) the execution of a written agreement was
procured by fraud, (2) an agreement was to become effective only upon certain
contingencies, or (3) the parties=
true intentions if the writing is ambiguous.  Gonzalez v. United Bhd. of
Carpenters & Joiners of Am., Local 551, 93 S.W.3d 208, 211 (Tex. AppCHouston [14th Dist.] 2002, no pet.).





[12]One commentator has noted that the effect of admitting
a collateral agreement is to conclude that the underlying agreement is only
partially integrated.  Dow, 35 S. Tex.
L. Rev. at 460 n.15.





[13]The court utilized Restatement
(First) of Contracts ' 240 (1932) for
the factors to consider when determining if the collateral agreement exception
applied because the Texas Supreme Court adopted this provision in Hubacek v.
Ennis State Bank, 317 S.W.2d 30, 32 (Tex. 1958).  Section 240 provides: 

 

An oral agreement is not superseded or invalidated by a
subsequent or contemporaneous integration, nor a written agreement by a
subsequent integration relating to the same subject-matter, if the agreement is
not inconsistent with the integrated contract, and 

 

(a) is made for separate consideration, or 

 

(b) is such
an agreement as might naturally be made as a separate agreement by parties
situated as were the parties to the written contract.





[14]This does not mean that, had the parties executed a
second contract, it would have failed for lack of consideration.  It merely
means that there is no evidence of separate consideration for the promise to
execute a second contract.





[15]Texas courts have applied Schlumberger to
resolve disputes over bank syndicate agreements, see Coastal Bank SSB v.
Chase Bank of Texas, N.A., 135 S.W.3d 840, 844-45 (Tex. App.CHouston [1st Dist.] 2004, no pet.); acquisition and
employment agreements, see IKON Office Solutions, Inc. v. Eifert, 125
S.W.3d 113, 128 (Tex. App.CHouston [14th Dist.] 2003, pet. denied); and real
estate contracts, see The Woodlands Land Development Co. v. Jenkins, 48
S.W.3d 415, 420-22 (Tex. App.CBeaumont 2001,
no pet).