Opinion filed June 11, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed June 11,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-07-00305-CV 

                                                    __________

 

                      STARCOM COMMUNICATIONS, LLC, Appellant

 

                                                             V.

 

                                          PHONETEC,
LP, Appellee

 



 

                                         On
Appeal from the 385th District Court

 

                                                        Midland
County, Texas

 

                                                Trial
Court Cause No. CV-45,418

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

 This
is a breach of contract suit.  StarCom Communications, LLC and Phonetec, LP
entered into an agreement whereby StarCom agreed to purchase wireless phone service
from Phonetec for resale.  StarCom subsequently terminated the contract and
filed suit, contending that Phonetec breached the agreement by not returning a
$250,000 deposit.  Phonetec counterclaimed, contending that StarCom breached
the agreement by failing to pay an invoice.  The trial court conducted a bench
trial and entered judgment for Phonetec.  We reverse and remand.








                                                             I. 
Background Facts

 StarCom
and Phonetec entered into an agreement labeled APRIVATE
LABEL PHONETEC PCS EXCLUSIVE SERVICES AGREEMENT.@ 
Under this agreement, StarCom purchased wireless phone services from Phonetec
for resale to retail customers.  Phonetec was required to reprogram their
software to accommodate StarCom=s
business model.  StarCom agreed to compensate Phonetec for the cost of computer
reprogramming, and it also paid a $100,000 deposit. After Phonetec completed
its programming, StarCom paid an additional $150,000 deposit.  The contract
provided that StarCom=s
deposit would be recouped through reduced charges for unlimited night and
weekend service costs.

StarCom=s marketing efforts were
unsuccessful.  The contract contained an early termination provision, and StarCom
requested that the contract be terminated and that its deposit, less any
outstanding charges, be returned.  Phonetec refused to refund the deposit, and
it invoiced StarCom $3,387.85.  StarCom refused to pay and filed suit,
contending that Phonetec was contractually required to offset the invoice
against the deposit and refund the balance.  Phonetec counterclaimed,
contending that the deposit was nonrefundable and that StarCom was required to
pay the invoice separately.  The trial court found that StarCom breached the
contract, and it awarded Phonetec actual damages of $3,387, attorney=s fees of $28,000, and
conditional fees in the event of an appeal.  

                                                                       II. 
Issues

 StarCom
contends that the trial court erred by finding that Phonetec was entitled to
keep the $250,000 deposit and by finding that StarCom breached the contract by
not paying Phonetec=s
invoice.

                                                        III. 
Analysis

A. 
Standard of Review.








 The
trial court=s
interpretation of an agreement is a legal question subject to de novo review. See
J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003).  Our
primary concern is to ascertain the true intentions of the parties as expressed
in the instrument. R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,
596 S.W.2d 517, 518 (Tex. 1980). We examine and consider the entire writing in
an effort to harmonize and give effect to all the provisions of the contract so
that none will be rendered meaningless.  Universal C.I.T. Credit Corp. v.
Daniel, 243 S.W.2d 154, 158 (Tex. 1951). No single provision taken alone
will be given controlling effect. All the provisions must be considered with
reference to the whole instrument. Myers v. Gulf Coast Minerals Mgmt. Corp.,
361 S.W.2d 193, 196 (Tex. 1962). The contracts are construed from a utilitarian
standpoint, bearing in mind the particular business activity sought to be
served.  Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 530 (Tex. 1987).

B. 
Is StarCom=s
Deposit Refundable?

StarCom=s position turns on whether
it was entitled to a refund of the $250,000 deposit.  The only contract
provision that addresses the deposit reads:

Prior
to the start of any custom programming for Purchaser, Purchaser agrees to pay
Phonetec a $100,000 deposit plus the cost of the custom programming.  At such
time as the programming is finished and performing to Purchaser=s satisfaction and prior to
any new End User activations, Purchaser agrees to pay Phonetec an additional
$150,000 deposit.  The total deposit amount shall equal $250,000 and shall be
recouped at a rate of $3.00 per active prorated subscriber per month.  The
method to be used for Purchaser=s
recoupment of the $250,000 deposit shall be for Phonetec to reduce the
unlimited nights and weekends MRC [monthly recurring charge] by $3.00 per End
User per month for the first 83,333 active, prorated End User months.  This
shall be equivalent to a $3.00 per month per prorated active End User credit
off the unlimited nights and weekends MRC until such time as the $250,000
deposit amount has been recouped.

 

Both parties
refer us to the negotiations leading up to the contract, including prior
versions of this provision, and the trial court made findings of fact
concerning the negotiations and the evolution of this provision.  We cannot
consider this extrinsic evidence because the trial court found that the
contract was unambiguous, because neither party contests that finding or argues
that the agreement is not fully integrated, and because the contract contains a
merger clause.[1]








When
a contract contains a merger or integration clause, the contract=s execution presumes that
all prior negotiations and agreements relating to the transaction have been
merged into the contract and that it will be enforced as written and cannot be
added to, varied, or contradicted by parol evidence.  ISG State Operations,
Inc. v. Nat=l
Heritage Ins. Co., 234 S.W.3d 711, 719 (Tex. App.CEastland 2007, pet. denied).  Phonetec
correctly points out that courts can properly consider parol evidence of the
surrounding circumstances when interpreting a contract.  See Avnsoe v.
Square 67 Dev. Corp., 521 S.W.2d 874, 876 (Tex. Civ. App.CEastland 1975, no writ). 
Courts have, for example, considered the circumstances leading to the execution
of an agreement.  See, e.g., Columbia Gas Transmission Corp. v. New Ulm Gas,
Ltd., 940 S.W.2d 587 (Tex. 1996) (interpreting contract=s pricing provision in
light of the parties=
knowledge of impending deregulation and their uncertainty about the impact this
would have on gas prices).  But when the parties utilize a merger provision,
the substance of any pre-execution negotiations including the text of any prior
drafts is not a permissible consideration absent pleading and proof of an
ambiguity, fraud, or accident.  ISG State Operations, 234 S.W.3d at 719-20.

The
contract does not expressly state what happens to the deposit if the contract
is terminated early.  StarCom argues that we should apply the generally
accepted meaning and usage of the word Adeposit@ and find that it was
refundable absent an expressed intent to the contrary.  Contract terms are
given their plain, ordinary, and generally accepted meaning unless the
instrument shows that the parties used them in a technical or different sense. 
Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996).  ADeposit@ is defined in the
dictionary as: A[S]omething
placed for safekeeping . . . money given as a pledge or down payment.@  Merriam-Webster=s
Collegiate Dictionary 335 (11th ed. 2004).  This definition describes
the purpose of a deposit, but it says nothing about whether a deposit is
presumed refundable or nonrefundable.  We have also reviewed the cases cited by
StarCom and find no general rule expressed.  Instead, the issue has been
treated on a case-by-case basis.

Phonetec
answers that the contract provided only one method for the return of the
deposit B  recoupment
through reduced unlimited night and weekend charges B and that this necessarily means the deposit
is nonrefundable because any other interpretation would render this provision
superfluous.  We agree with Phonetec that, so long as the contract remained in
force, the deposit could only be recouped through reduced charges, but we cannot
agree that this forecloses any other treatment of the deposit following an
agreed early termination.








The
contract simply fails to address the deposit following an agreed early
termination.  This absence makes the agreement ambiguous because it is
impossible to determine the parties=
intentions from the four corners of the agreement.  See Webster, 128
S.W.3d at 229 (finding arbitration agreement ambiguous because it was unclear
whether the unrestricted right to unilaterally abolish or modify personnel
policies gave the employer the right to terminate the agreement without
notice).  We recognize that both parties contend the agreement is unambiguous,
but this court has the authority to make an independent determination of
ambiguity.  Id. at 231.  

Because
the contract does not speak to the treatment of the deposit following an early
termination, it is necessary to consider extraneous evidence to determine the
contract=s true
meaning.  See Nat=l
Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517,
520 (Tex. 1995) (when a contract is ambiguous a court may consider the parties= interpretation and admit
extraneous evidence to determine the true meaning of the instrument).  We
realize that the trial court admitted some extrinsic evidence and that it made
some related findings of fact.  However, it does not appear from the record that
this issue was fully developed.  Because we have determined that the contract
was ambiguous, we reverse the judgment so that the trial court can consider
further evidence as necessary to ascertain the parties= intentions.

                                                                    IV. 
Holding 

The
judgment of the trial court is reversed, and this cause is remanded to the
trial court for further proceedings.

 

 

RICK STRANGE

JUSTICE

 

June 11, 2009

Panel consists of: Wright, C.J.,

McCall, J., and Strange, J.









     [1]That clause reads:

 

This Agreement, including all exhibits and documents directly
referenced, constitutes the entire agreement between the Parties with respect
to the subject matter hereof, and supersedes and replaces all prior or
contemporaneous understandings or agreements, written or oral, regarding such
subject matter.  No amendment to or modification of this Agreement will be
binding unless in writing and signed by a duly authorized representative of
both Parties.