**Opinion filed June 11, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00305-CV

_____

## STARCOM COMMUNICATIONS, LLC, Appellant

## V.

## PHONETEC, LP, Appellee

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CV-45,418**

## M E M O R A N D U M   O P I N I O N

This is a breach of contract suit. StarCom Communications, LLC and Phonetec, LP entered into an agreement whereby StarCom agreed to purchase wireless phone service from Phonetec for resale. StarCom subsequently terminated the contract and filed suit, contending that Phonetec breached the agreement by not returning a $250,000 deposit. Phonetec counterclaimed, contending that StarCom breached the agreement by failing to pay an invoice. The trial court conducted a bench trial and entered judgment for Phonetec. We reverse and remand.

## I. *Background Facts*

StarCom and Phonetec entered into an agreement labeled "PRIVATE LABEL PHONETEC PCS EXCLUSIVE SERVICES AGREEMENT." Under this agreement, StarCom purchased wireless phone services from Phonetec for resale to retail customers. Phonetec was required to reprogram their software to accommodate StarCom's business model. StarCom agreed to compensate Phonetec for the cost of computer reprogramming, and it also paid a $100,000 deposit. After Phonetec completed its programming, StarCom paid an additional $150,000 deposit. The contract provided that StarCom's deposit would be recouped through reduced charges for unlimited night and weekend service costs.

StarCom's marketing efforts were unsuccessful. The contract contained an early termination provision, and StarCom requested that the contract be terminated and that its deposit, less any outstanding charges, be returned. Phonetec refused to refund the deposit, and it invoiced StarCom $3,387.85. StarCom refused to pay and filed suit, contending that Phonetec was contractually required to offset the invoice against the deposit and refund the balance. Phonetec counterclaimed, contending that the deposit was nonrefundable and that StarCom was required to pay the invoice separately. The trial court found that StarCom breached the contract, and it awarded Phonetec actual damages of $3,387, attorney's fees of $28,000, and conditional fees in the event of an appeal.

## II. *Issues*

StarCom contends that the trial court erred by finding that Phonetec was entitled to keep the $250,000 deposit and by finding that StarCom breached the contract by not paying Phonetec's invoice.

## III. *Analysis*

### A. *Standard of Review*.

The trial court's interpretation of an agreement is a legal question subject to de novo review. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951).

No single provision taken alone will be given controlling effect. All the provisions must be considered with reference to the whole instrument. *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962). The contracts are construed from a utilitarian standpoint, bearing in mind the particular business activity sought to be served. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987).

### B. Is StarCom's Deposit Refundable?

StarCom's position turns on whether it was entitled to a refund of the $250,000 deposit. The only contract provision that addresses the deposit reads:

> Prior to the start of any custom programming for Purchaser, Purchaser agrees to pay Phonetec a $100,000 deposit plus the cost of the custom programming. At such time as the programming is finished and performing to Purchaser's satisfaction and prior to any new End User activations, Purchaser agrees to pay Phonetec an additional $150,000 deposit. The total deposit amount shall equal $250,000 and shall be recouped at a rate of $3.00 per active prorated subscriber per month. The method to be used for Purchaser's recoupment of the $250,000 deposit shall be for Phonetec to reduce the unlimited nights and weekends MRC [monthly recurring charge] by $3.00 per End User per month for the first 83,333 active, prorated End User months. This shall be equivalent to a $3.00 per month per prorated active End User credit off the unlimited nights and weekends MRC until such time as the $250,000 deposit amount has been recouped.

Both parties refer us to the negotiations leading up to the contract, including prior versions of this provision, and the trial court made findings of fact concerning the negotiations and the evolution of this provision. We cannot consider this extrinsic evidence because the trial court found that the contract was unambiguous, because neither party contests that finding or argues that the agreement is not fully integrated, and because the contract contains a merger clause.[1]

When a contract contains a merger or integration clause, the contract's execution presumes that all prior negotiations and agreements relating to the transaction have been merged into the contract and that it will be enforced as written and cannot be added to, varied, or contradicted by

---

[1]That clause reads:

> This Agreement, including all exhibits and documents directly referenced, constitutes the entire agreement between the Parties with respect to the subject matter hereof, and supersedes and replaces all prior or contemporaneous understandings or agreements, written or oral, regarding such subject matter. No amendment to or modification of this Agreement will be binding unless in writing and signed by a duly authorized representative of both Parties.

parol evidence. *ISG State Operations, Inc. v. Nat'l Heritage Ins. Co.*, 234 S.W.3d 711, 719 (Tex. App.—Eastland 2007, pet. denied). Phonetec correctly points out that courts can properly consider parol evidence of the surrounding circumstances when interpreting a contract. *See Avnsoe v. Square 67 Dev. Corp.*, 521 S.W.2d 874, 876 (Tex. Civ. App.—Eastland 1975, no writ). Courts have, for example, considered the circumstances leading to the execution of an agreement. *See, e.g., Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587 (Tex. 1996) (interpreting contract's pricing provision in light of the parties' knowledge of impending deregulation and their uncertainty about the impact this would have on gas prices). But when the parties utilize a merger provision, the substance of any pre-execution negotiations including the text of any prior drafts is not a permissible consideration absent pleading and proof of an ambiguity, fraud, or accident. *ISG State Operations*, 234 S.W.3d at 719-20.

The contract does not expressly state what happens to the deposit if the contract is terminated early. StarCom argues that we should apply the generally accepted meaning and usage of the word "deposit" and find that it was refundable absent an expressed intent to the contrary. Contract terms are given their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "Deposit" is defined in the dictionary as: "[S]omething placed for safekeeping . . . money given as a pledge or down payment." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 335 (11th ed. 2004). This definition describes the purpose of a deposit, but it says nothing about whether a deposit is presumed refundable or nonrefundable. We have also reviewed the cases cited by StarCom and find no general rule expressed. Instead, the issue has been treated on a case-by-case basis.

Phonetec answers that the contract provided only one method for the return of the deposit – recoupment through reduced unlimited night and weekend charges – and that this necessarily means the deposit is nonrefundable because any other interpretation would render this provision superfluous. We agree with Phonetec that, so long as the contract remained in force, the deposit could only be recouped through reduced charges, but we cannot agree that this forecloses any other treatment of the deposit following an agreed early termination.

4

The contract simply fails to address the deposit following an agreed early termination. This absence makes the agreement ambiguous because it is impossible to determine the parties' intentions from the four corners of the agreement. *See Webster*, 128 S.W.3d at 229 (finding arbitration agreement ambiguous because it was unclear whether the unrestricted right to unilaterally abolish or modify personnel policies gave the employer the right to terminate the agreement without notice). We recognize that both parties contend the agreement is unambiguous, but this court has the authority to make an independent determination of ambiguity. *Id*. at 231.

Because the contract does not speak to the treatment of the deposit following an early termination, it is necessary to consider extraneous evidence to determine the contract's true meaning. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (when a contract is ambiguous a court may consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument). We realize that the trial court admitted some extrinsic evidence and that it made some related findings of fact. However, it does not appear from the record that this issue was fully developed. Because we have determined that the contract was ambiguous, we reverse the judgment so that the trial court can consider further evidence as necessary to ascertain the parties' intentions.

IV. *Holding*

The judgment of the trial court is reversed, and this cause is remanded to the trial court for further proceedings.


RICK STRANGE

JUSTICE


June 11, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

5