

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00085-CV

———————————————

DANNY K. PRINCE, Appellant

V.

ROBERT M. WELEBA, Appellee

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-332806-22

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

In this case involving a suit on a debt, Appellant Danny K. Prince sued Appellee Robert M. Weleba seeking money paid pursuant to a 2015 agreement. Weleba answered and asserted the statute of limitations as one of his affirmative defenses based on a 2017 agreement which failed to mention the money but included an integration or merger clause.[1] After both parties moved for summary judgment, the trial court denied Prince's motion and granted Weleba's motion and supplemental motion. Because we conclude that genuine issues of material fact exist regarding the amount of money, if any, due Prince and when the statute of limitations accrued, we will affirm the denial of Prince's motion for summary judgment and reverse the granting of Weleba's motion and supplemental motion for summary judgment and remand for further proceedings.

---

[1]*See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 334 n.6 (Tex. 2011) (citing 7 Joseph M. Perillo, *Corbin on Contracts* § 28.21 (rev. ed. 2002) (describing merger clauses as "stating that the writing contains the entire contract and that no representations other than those contained in the writing have been made"); 11 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 33.21 (4th ed. 1999) ("Recitations to the effect that a written contract is integrated, that all conditions, promises, or representations are contained in the writing . . . are commonly known as merger or integration clauses.")).

## II. Background

**A. The parties sign the Purchase Agreement; later they sign the Rescission Agreement (containing an integration or merger clause), but no mention is made of the purchase money.**

In March 2015, Prince and Weleba signed an "LLC Membership Interest Purchase Agreement" (the Purchase Agreement), wherein Weleba, as "sole member and officer of Hospice Care Partners, LLC (Hospice Care)" agreed to sell to Prince 62% of his membership interests in Hospice Care for $431,675. Pursuant to the Purchase Agreement, Prince paid Weleba $431,675.

In January 2017, Prince and Weleba signed a "Rescission of Prior Sale of Limited Liability Company Membership Interest" (the Rescission Agreement), wherein they agreed to rescind the sale of the "limited liability company membership interest." The Rescission Agreement made no mention of the purchase money's return, and it stated that "the Parties still desire[d] to enter into a binding sales agreement." In addition, the Rescission Agreement contained a paragraph—the integration or merger clause—stating, "This agreement constitutes the entire agreement of the Parties and shall supersede all prior agreements, written or oral, between the parties regarding this subject matter."

Prince later set out the reasons for the rescission of the Purchase Agreement in an affidavit. According to Prince, Weleba advised him that by his becoming a "significant member" of Hospice Care, Hospice Care was required to file certain documents disclosing the acquisition, which could "adversely affect[] Hospice Care's

license to bill Medicare and Medicaid." Because Hospice Care was in the process of filing for a new license—its license was set to expire in December 2016—and Prince's purchase could delay the licensing process, he and Weleba rescinded the Purchase Agreement until Hospice Care's new license was issued. Prince stated that "as a show of good faith, I agreed that for the short term, [Weleba] could retain the $431,675.00 I gave to him for the Membership Interests until the licensing was completed."

## B. Prince demands the return of the money.

Eventually, Prince became frustrated and demanded the return of his money on June 24, 2020. Weleba responded to the demand in a July 10, 2020 email, stating that he "agree[d] with [Prince to] . . . dissolve the partnership" and that he "share[d] [Prince's] desire to get this matter expeditiously and equitably resolved," and he asked Prince "to come up with a fair number that [they could] both live with and get [Prince] paid back that which [he] may be due." Later, in an August 26, 2020 email, Weleba stated that he would not return the money and that Prince owed him either $286,831.06 or $122,458.06, depending on whether a company in which Prince owned an interest would release a claim against Hospice Care.

## C. Prince files suit against Weleba; Weleba answers and files a counterclaim; both parties move for summary judgment; Prince amends his pleadings.

On March 31, 2022, Prince filed suit against Weleba, asserting claims for breach of contract, quantum meruit, fraud, fraudulent inducement, negligent misrepresentation, breach of fiduciary duty, money had and received, request for

4

accounting, foreclosure of constructive trust/equitable relief, declaratory judgment, and attorneys' fees and interest. Weleba answered, asserted affirmative defenses, and filed a counterclaim. In the counterclaim, Weleba pleaded two causes of action: indemnification and breach of contract, both arising from the Rescission Agreement. Prince filed an answer to the counterclaim, raising numerous affirmative defenses and asserting a "counterclaim to [Weleba's] counterclaim."

Both parties moved for summary judgment. Prince moved for traditional and no-evidence summary judgment in what he stated was "strictly based on [his] claims for breach of contract and money had and received"; however, later in the motion, he moved for no-evidence summary judgment regarding Weleba's claims for indemnification. Weleba's traditional motion for summary judgment relied only on his affirmative defense of the statute of limitations. Both parties responded to the respective summary judgments, and both filed replies to the responses.

On the same day that Prince filed his summary judgment response, he amended his pleadings to add a claim for unjust enrichment and to allege the discovery rule:

> So, even though the Re[s]cission Agreement was executed on January 17, 2017, the purpose of the Re[s]cission Agreement was to allow [Weleba] to deal with the licensing issues Hospice Care was experiencing and [it] would have experienced more problems had [Prince] become majority owner of Hospice Care. Thus, the first instance in which [Prince] knew or had reason to know that he had a claim against [Weleba] was between June 24, 2020, and August 26, 2020, i.e., the June 24, 2020 Demand Letter to [Weleba] . . ., the August 14, 2020 Demand Letter . . ., the

5

August 26, 2020 Weleba Letter . . . and the July 10, 2020 Weleba and [Prince] Emails . . . .

**D. The trial court grants Weleba's motion and denies Prince's motion; Weleba files a supplemental motion for summary judgment, which the trial court grants; Weleba nonsuits his claims; final judgment is entered; Prince appeals.**

Following a hearing, the trial court signed orders denying Prince's motion for summary judgment and granting Weleba's motion for summary judgment and entering a take-nothing judgment on Prince's claims. After the orders were signed, Weleba filed a supplemental motion for summary judgment which addressed the claim for unjust enrichment in Prince's amended pleadings. Prince filed a response to the supplemental motion, as well as an amended answer to Weleba's counterclaim and an "amended counterclaim to [Weleba's] counterclaim." Thereafter, Weleba nonsuited "all affirmative claims" against Prince.

After a hearing, the trial court granted Weleba's supplemental motion for summary judgment and entered a final judgment. Prince appeals from this judgment and the earlier orders granting Weleba's motion for summary judgment and denying Prince's motion for partial summary judgment.

## III. DISCUSSION

On appeal, Prince raises two issues, complaining that the trial court erred (1) in granting Weleba's motion and supplemental motion for summary judgment and (2) in denying Prince's motion for partial summary judgment.

6

## A. Standard of Review

We review a trial court's ruling on a motion for summary judgment de novo. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

With regard to a traditional motion for summary judgment, we will affirm summary judgment only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action (or defense, as the case may be) as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all elements of that defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). With regard to a no-evidence motion for summary judgment, if the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see* Tex. R. Civ. P. 166a(i).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848. We should then render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848.

## B. Weleba's Motion and Supplemental Motion for Summary Judgment

In both his original and supplemental motions, Weleba moved for summary judgment only on his affirmative defense of limitations, contending that all of Prince's causes of action accrued in January 2017 when the Rescission Agreement was entered. On appeal, Prince argues that Weleba's summary judgment motion "rests upon the incorrect assumption that the parties' Rescission Agreement required Weleba to refund Prince's investment on the date of the agreement or be in breach."

### 1. Applicable Law

A defendant seeking traditional summary judgment on a limitations defense must establish "(1) when the cause of action accrued, and (2) that the plaintiff brought its suit later than the applicable number of years thereafter—i.e., that 'the statute of limitations has run.'" *Levinson Alcoser Assoc., L.P. v. El Pistolón II, Ltd.*, 670 S.W.3d 622, 626 (Tex. 2023) (citing *Draughon v. Johnson*, 631 S.W.3d 81, 89 (Tex. 2021) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003))). Therefore, as the party moving for summary judgment, Weleba bore the burden to

8

conclusively establish that the statute is applicable, including the date on which the statute began to run, which is the date the causes of action accrued. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Provident Life & Accident Ins. Co*, 128 S.W.3d at 220.

Determining when a cause of action accrued is a question of law. *Provident Life & Accident Ins. Co.*, 128 S.W.3d at 221. Generally, a cause of action accrues, and the statute begins to run, "when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Id.* (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). The statute begins to run on the accrual date even if the injury is not discovered until later or all damage resulting from the injury has not yet occurred. *Id.*

In certain narrow cases, the discovery rule defers accrual until a plaintiff "knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). The party moving for summary judgment on the basis of limitations must negate the discovery rule if it applies and has been pleaded by the nonmoving party. *Env't Procs., Inc. v. Guidry*, 282 S.W.3d 602, 622 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (op. on reh'g).

9

### 2. Analysis

In his motion for summary judgment, Weleba set out the following "undisputed facts"[2]:

> 4. On March 9, 2015, [Prince] and [Weleba] entered into the Purchase Agreement, whereby [Prince] purchased a 62% interest in the Company for approximately $432,675.00.
>
> 5. On January 17, 2017, [Prince] and [Weleba] entered into the Re[s]cission Agreement, whereby the Purchase Agreement was rescinded.
>
> 6. [Prince] filed this lawsuit on March 31, 2022, alleging, *inter alia*, breach of contract, fraud, fraudulent inducement, and breach of fiduciary duty.

Weleba attached the Purchase Agreement and the Rescission Agreement to the summary judgment motion as evidence. Based on these facts, Weleba asserted that he was entitled to summary judgment because "[a]t the latest, all of [Prince's] claims accrued in January 2017, more than five years before [Prince] instituted this suit."

Weleba's supplemental motion for summary judgment attacking the unjust enrichment claim in Prince's amended pleadings also relied exclusively on the limitations defense. As summary judgment evidence for his supplemental motion,

---

[2]"The parties' mere agreement that an issue can be decided as a matter of law on undisputed facts does not mean that, applying the appropriate applicable law and standards of review, the evidence before the court is actually undisputed or the undisputed facts presented are sufficient for a court to decide the issue as a matter of law." *Infinity Cnty. Mut. Ins. Co. v. Tatsch*, 617 S.W.3d 614, 621 (Tex. App.—San Antonio 2020, pet. denied) (op. on reh'g).

10

Weleba attached the order granting the original summary judgment and his declaration.

Prince's summary judgment response set out his version of the "undisputed specific facts":

> 12.  Effective April 30, 2015, [Prince] acquired from [Weleba] . . . 62% of the outstanding membership interests (the "Prince Membership Interests") of Hospice Care Partners, LLC ("Hospice Care") pursuant to that certain LLC Membership Interest Purchase Agreement ("MIPA") . . . .  Pursuant to the MIPA, [Prince] paid [Weleba] $431,675.00 for the Prince Membership Interests.
>
> 13.  Unfortunately, based on representations made by [Weleba] to [Prince], [Prince] could not become a member of Hospice Care without adversely affecting Hospice Care's license to bill Medicare and Medicaid.
>
> . . . .
>
> 15.  On advice of legal counsel, [Prince] and [Weleba] rescinded the MIPA until the new license was issued.  Thereafter, plans to notify the State and Federal agencies of a change of ownership would be made and allow Hospice Care to continue to bill its services.  In the meantime, as a show of good faith, [Prince] agreed that for the short term, [Weleba] could retain the $431,675.00 he gave to [Weleba] for the Membership Interests until the licensing was completed.

According to Prince, "the intent of the Rescission Agreement was that [Prince] was never deemed to be a member of Hospice Care" and to allow Weleba "to obtain the appropriate licensing."

However, Prince eventually "became frustrated" and demanded a return of his money in letters dated June 24, 2020 and August 14, 2020.  According to Prince's response to the summary judgment motion,

11

[Weleba] responded in an email to [Prince] dated August 26, 2020 . . . stating that [Prince] owed him either $286,831.06 or $122,458.06, treating [Prince] as if he either was still a member of Hospice Care even though the Re[s]cission Agreement . . . voided, nullified, cancelled and completely erased the [Purchase Agreement] or [Prince] would have to pay [Weleba] [$]286,831.06 or $122,458.06 to be reinstated as a member of Hospice Care but under no uncertain circumstances was [Weleba] going to return the $431,675.00 [Prince] had paid him. The difference between paying [Weleba] $286,831.06 or $122,458,.00 [sic] depended on whether Paramount Healthcare, a company in which [Prince] own[ed] an interest, would release a claim of $164,373.00 against Hospice Care. Under either alternative, [Weleba] was requiring [Prince] to pay him an additional $286,831.06 or $122,458.06 for [Prince] to retain or reacquire a 62% interest in Hospice Care.

In addition, the response noted that in Weleba's July 10, 2020 email, he had agreed to "dissolve the partnership" and wanted to get "this matter expeditiously and equitably resolved." According to the response, Weleba stated "that the way to go about this [wa]s to come up with a fair number that [he and Prince could] both live with and [Prince could] get paid back that which [he] may be due." In an email to Weleba, Prince's attorney referred to the disputed funds as money "loaned to the company." Prince's response also pointed out that Weleba's motion for summary judgment "wholly ignore[d] the 'Discovery Rule.'"

As summary judgment evidence, Prince attached his affidavit, the Purchase Agreement, the Rescission Agreement, the June 24, 2020 demand letter, the August 14, 2020 demand letter, the July 10, 2020 email from Weleba to Prince and his attorney, and the August 26, 2020 email from Weleba to Prince. As noted above, on

12

the same day the response was filed, Prince amended his pleadings to add an unjust enrichment claim and to plead the discovery rule.

Notably, the one-page Rescission Agreement upon which Weleba moved for summary judgment failed to address or even mention the $431,675 paid by Prince to Weleba. Rather, the Rescission Agreement stated that it "rescind[ed] the March 9, 2015 sale of limited liability company interest" and that "the Parties still desire to enter into a binding sales agreement."

In his reply to the response, Weleba asserted that all of Prince's claims accrued on January 18, 2017, the date after the Rescission Agreement was signed.[3] In addition, Weleba argued that Prince "attempt[ed] to add terms to an unambiguous contract that contains an integration clause in an effort to salvage his expired limitations." Citing Prince's summary judgment response, Weleba complained that Prince "attempts to add, modify, or change the unambiguous written terms by asserting that he agreed to allow [Weleba] to 'retain the $431,675.00 . . . until the licensing was completed.'" As for the discovery rule, Weleba contended that it was not "trigger[ed]" in this case.

---

[3]On appeal, Weleba states that the accrual date is January 17, 2017: "Either the January 17, 2017 rescission triggered an obligation to make a payment, or nothing did." Therefore, "[i]f any claim for payment ever accrued, it accrued no later than January 17, 2017."

### a. Parol evidence is admissible despite the integration or merger clause.

On appeal, Weleba asserts that "[s]ince the Rescission Agreement is a written contract with an integration clause, that means that, as of the execution of the Rescission Agreement, there were no contractual obligations between the parties." While Weleba stated before the trial court that the Rescission Agreement was unambiguous, Prince contended that it was ambiguous.[4] In any event, it is undisputed that the agreement did not mention the money paid by Prince to Weleba.[5] Therefore, we must first decide whether the integration or merger clause prevents parol evidence concerning an alleged collateral agreement regarding the money.

Generally, the parol evidence rule circumscribes the use of extrinsic evidence when interpreting an integrated document. *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981). The parol evidence rule does not, however, prohibit courts from considering extrinsic evidence of the facts and circumstances surrounding the contract's execution as "an aid in the construction of the contract's language." *URI,*

---

[4]Whether a contract is ambiguous is a question of law for the court to decide. *First Bank v. Brumitt*, 519 S.W.3d 95, 105 (Tex. 2017).

[5]In his reply to the response to his motion for summary judgment, Weleba states, "*If* [Prince] were entitled to any payment as part of that rescission, it was due when the rescission occurred." [Emphasis added.] On appeal, Weleba acknowledges that the "obligation [to return the money] is not found anywhere in the [R]escission [A]greement; nowhere does it provide for any payment."

14

*Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 765 (Tex. 2018) (quoting *Sun Oil Co.*, 626 S.W.2d at 731).

When a contract contains a merger or integration clause, the contract's execution presumes that all prior negotiations and agreements relating to the transaction have been merged into the contract, and it will be enforced as written and cannot be added to, varied, or contradicted by parol evidence. *Barker v. Roelke*, 105 S.W.3d 75, 83 (Tex. App.—Eastland 2003, pet. denied). However, this rule has exceptions.

A merger clause can be disregarded upon pleading and proof of ambiguity, fraud, or accident. *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898 (Tex. App.—Fort Worth 1997, writ denied). It also does not prohibit evidence of a collateral agreement. *Ledig v. Duke Energy Corp.*, 193 S.W.3d 167, 179 n.10 (Tex. App.—Houston [1st Dist.] 2006, no pet.).[6] "A collateral agreement is one that is supported by separate consideration and that the parties 'might naturally' make separately under the circumstances." *Barkley v. Connelly*, No. 07-22-00144-CV, 2023 WL 5499000, at *3 (Tex. App.—Amarillo Aug. 24, 2023, no pet. h.) (mem. op. on reh'g) (quoting *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 33 (Tex. 1958)). A collateral agreement between parties concerning the relationship of several distinct obligations between them falls within the exception to the parol evidence rule. *Walz v. Hayes*, No. 01-16-00277-CV, 2017

---

[6]Parol evidence is also admissible to show the parties' true intentions if the writing is ambiguous. *Gonzalez v. United Bhd. of Carpenters & Joiners of Am., Local 551*, 93 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

WL 711744, at *2 (Tex. App.—Houston [1st Dist.] Feb. 23, 2017, pet. denied) (mem. op.).

The application of the collateral agreement exception is a function of the integration present in the executed contract. *ISG State Operations, Inc. v. Nat'l Heritage Ins. Co., Inc.*, 234 S.W.3d 711, 720 (Tex. App.—Eastland 2007, pet. denied). If a contract is only partially integrated, admission of an oral agreement not inconsistent with the terms of the written contract comports with the parol evidence rule. *Id.*

Under the parol evidence rule, the Rescission Agreement precludes enforcement of any prior or contemporaneous agreement that addresses the same subject matter and is inconsistent with its terms. *See West v. Quintanilla*, 573 S.W.3d 237, 244–45 (Tex. 2019). But it does not preclude enforcement of an agreement that is "collateral" to and not inconsistent with the Rescission Agreement. *See id.* at 245. "'[R]elated' and 'correlated' agreements can be collateral." *Id.*

A case from one of our sister courts informs our analysis here. In *StarCom Commc'ns, LLC v. Phonetec, LP*, No. 11-07-00305-CV, 2009 WL 1653059, at *1 (Tex. App.—Eastland June 11, 2009, no pet.) (mem. op.), the Eastland Court of Appeals examined an agreement whereby StarCom agreed to purchase wireless phone service from Phonetec for resale. StarCom subsequently terminated the contract and filed suit, contending that Phonetec breached the agreement by not returning a $250,000 deposit. The trial court conducted a bench trial and entered judgment for Phonetec. In reversing the trial court's judgment and remanding the case, the Eastland court

16

noted that the contract did not expressly state what would happen to the deposit if the contract was terminated early. *Id.* at *2. Therefore, "[b]ecause the contract d[id] not speak to the treatment of the deposit following an early termination, it [was] necessary to consider extraneous evidence to determine the contract's true meaning." *Id.* at *3.

Here, the Rescission Agreement also does not mention the money paid by Prince to Weleba. Therefore, the Rescission Agreement is integrated only as to the parties' agreements relating to the subject matter it addresses—rescinding Prince's membership interest in Hospice Care—not as to all prior or contemporaneous agreements between Prince and Weleba. *See West*, 573 S.W.3d at 244 ("By its own terms, the 2015 Purchase Agreement is integrated only as to the parties' agreements relating to the 'subject matter' it addresses, not as to all prior or contemporaneous agreements between the parties."); *see also ISG State Operations, Inc.*, 234 S.W.3d at 719 n.10 ("A partially integrated contract is a full and complete expression of the terms contained in that agreement but is not a final and complete expression of all terms agreed upon between the parties."). Therefore, Prince could offer parol evidence concerning whether the $431,675 became a loan—subject to the completion of the updated licensing of Hospice Care—after the Rescission Agreement was entered.

### b. Weleba failed to establish an accrual date for Prince's causes of action.

To prevail on his motion for summary judgment, Weleba needed to establish the accrual date for Prince's causes of action.[7] *See Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 846. In response, Prince only needed to raise a genuine issue of material fact regarding the affirmative defense of limitations to defeat summary judgment. *See Rivas v. Sw. Key Programs, Inc.*, 507 S.W.3d 777, 783 (Tex. App.—El Paso 2015, no pet.) (reversing summary judgment because there was a genuine issue of material fact on the date of accrual for the claims).

Weleba generally contended that the accrual date for all of Prince's causes of action was the date of the January 2017 Rescission Agreement.[8] Prince, on the other hand, asserted that the "statute of limitations d[id] not apply," but if it did, the

---

[7]We note that Weleba's motion also failed to address whether, because of Prince's pleading of fraud and fraudulent inducement, either one or both of the contracts—the Purchase Agreement and Rescission Agreement—could be avoided. A contract is subject to avoidance on the ground of fraudulent inducement. *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 331 (citing *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990)). "For more than fifty years, it has been 'the rule that a written contract [even] containing a merger clause can [nevertheless] be avoided for antecedent fraud and fraud in its inducement and that the parol evidence rule does not stand in the way of proof of such fraud.'" *Id.* (citing *Dallas Farm Mach. Co. v. Reaves*, 307 S.W.2d 233, 239 (Tex. 1957)). However, because of our holding, we need not address this alternative argument. *See* Tex. R. App. P. 47.1.

[8]For some causes of action, such as Prince's accounting claim, Weleba acknowledges in his motion for summary judgment that the "exact date of accrual" is "hard to pin down."

18

discovery rule applied and "the earliest when perhaps [Prince] should have discovered that he had a claim was when his attorney sent [the] June 24, 2020 Demand Letter."

Through his affidavit and attachments, Prince set out facts regarding whether the money originally tendered to Weleba for an interest in Hospice Care was converted to a loan after entry of the Rescission Agreement. In his July 2020 email, Weleba confirmed that Prince was due "a fair number that [they could] both live with [that would] get [Prince] paid back that which [he] may be due." In his August 2020 email, Weleba again acknowledged having the $431,675 as Prince's "initial investment," but he wanted to offset the amount owed Prince due to what he contended were "capital contributions" owed by Prince and a debt owed to another entity.[9]

A defendant who moves for summary judgment based on limitations must conclusively establish the elements of that defense, including when the cause of action accrued. *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019). Because each cause of action may allege different legal injuries, they could—at least in theory—each accrue at different times, even though they arise from the same wrongful conduct. *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 815 (Tex. 2021).

---

[9]Prince also argues in his response to Weleba's summary judgment motion that both the Purchase Agreement and the Rescission Agreement were between him and Weleba, not Hospice Care, "which would have been the appropriate entity having standing to require an additional capital contribution." Again, because of our holding, we need not address this alternative argument. *See* Tex. R. App. P. 47.1.

19

Here, Weleba asserted generally that all causes of action arose on the date the Rescission Agreement was entered, which was insufficient to establish when each of the alleged causes of action accrued.

As noted above, when a cause of action accrues is generally a question of law. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001). But we cannot resolve the question of accrual when Prince's and Weleba's rights and obligations regarding the $431,675 are unclear. *See Boulle v. Boulle*, 160 S.W.3d 167, 174–75 (Tex. App.—Dallas 2005, pet. denied) (holding that party cannot prevail on limitations grounds in his summary judgment because the court "cannot resolve the question of accrual when Franco's rights and Jean's obligations under the five-percent provision are ambiguous"). Therefore, after considering all of the summary judgment evidence, we conclude that Prince presented evidence raising a genuine issue of material fact regarding when each of his causes of action accrued.

### c. Weleba did not conclusively negate application of the discovery rule.

Moreover, to be entitled to summary judgment on limitations grounds, Weleba was required to negate the discovery rule by conclusively establishing that either (1) the discovery rule does not apply, or (2) if the rule applies, the summary judgment evidence negates it. *See Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 460 (Tex. 2023); *see also Hernandez v. Garcia*, No. 13-12-00096-CV, 2013 WL 1384882, at *3–4 (Tex. App.—Corpus Christi–Edinburg

April 4, 2013, no pet.) (mem. op.) ("As the party moving for traditional summary judgment, it was [appellee's] burden to establish both the date on which the statute began to run and to either negate the discovery rule or explain why it is inapplicable.").

Here, although Prince amended his pleadings to allege the discovery rule seven days prior to the hearing,[10] Weleba did not amend his motion for summary judgment to address it. *See Proctor v. White*, 172 S.W.3d 649, 652 (Tex. App.—Eastland 2005, no pet.) (Appellees "did not address the discovery rule after appellant raised it in response to their motion for summary judgment" and "did not attempt to establish when appellant knew or should have known of the facts giving rise to his claims"; therefore, they "did not prove as a matter of law that no genuine issue of material fact exists concerning when appellant knew or should have known of the facts giving rise to his claims."). He also did not object to Prince's reliance on the rule. *Id.* (holding that because appellees failed to object to appellant's reliance on the discovery rule, appellees "tried the discovery rule issue by consent"). All Weleba did was argue

---

[10]Texas Rule of Civil Procedure 166a(c) requires the trial court to consider the pleadings "on file at the time of the hearing, or filed thereafter and before judgment with permission of the court." Tex. R. Civ. P. 166a(c). Because the amended pleadings here were filed seven days prior to the hearing on the motion for summary judgment, no leave of court was required. *See* Tex. R. Civ. P. 63; *see also Smith v. Heard*, 980 S.W.2d 693, 698 (Tex. App.—San Antonio 1998, pet. denied) ("An amendment is timely, and leave of court is not required, when the amended pleading is filed exactly one week before the summary judgment hearing." (citing *Sosa v. Cent. Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995))).

generally, in his supplemental motion for summary judgment[11] and response to Prince's motion for summary judgment, that the discovery rule did not apply and, if it did, any failure to receive money was not inherently undiscoverable. This was insufficient to "conclusively negate" application of the discovery rule. *Erikson*, 590 S.W.3d at 563.

### d. Weleba failed to meet his summary judgment burden.

As the party moving for traditional summary judgment, it was Weleba's burden both to establish the date on which the statute began to run and either to negate the discovery rule or to explain why it is inapplicable. *See Hernandez*, 2013 WL 1384882, at *4. Because neither his original nor his supplemental motion met these requirements, we conclude that Weleba did not conclusively establish the statute of limitations as an affirmative defense. *See id.*; *see also Podolny v. Elliott Turbomachinery, Co., Inc.*, No. 13-04-499-CV, 2007 WL 271118, at *2 (Tex. App.—Corpus Christi–Edinburg Feb. 1, 2007, no pet.) (mem. op.) ("To affirm a trial court's summary judgment, we must find that there is no genuine issue of material fact regarding the accrual of the statute of

---

[11]The supplemental motion for summary judgment was filed one week *after* the order granting summary judgment was signed and only addressed the amended claim for unjust enrichment. *See Davis v. Loving*, No. 14-15-00059-CV, 2016 WL 3574653, at *3 (Tex. App.—Houston [14th Dist.] June 30, 2016, no pet.) (mem. op.) (stating that "a movant may not use its reply to amend its motion for summary judgment"); *Smith v. Atl. Richfield Co.*, 927 S.W.2d 85, 88 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (op. on reh'g) ("A reply brief does not suffice to rebut a claim added in an amended pleading."); *see also Casso v. Brand*, 776 S.W.2d 551, 553 (Tex. 1989) ("[A]ll theories in support of a summary judgment, as well as all opposing issues, must be presented in writing to the court at the hearing.").

limitations and that the movants showed they were entitled to judgment as a matter of law."). Therefore, it was error for the trial court to grant Weleba's motion and supplemental motion for summary judgment.

We sustain Prince's first issue.

## C. Prince's Motion for Summary Judgment

In his second issue, Prince argues that the trial court erred in denying him (1) traditional summary judgment on his claims for breach of contract and money had and received and (2) no-evidence summary judgment on Weleba's indemnification claim.[12]

### 1. The trial court properly denied Prince's traditional summary judgment motion.

To prevail on his breach of contract claim, Prince was required to establish: (1) the existence of a valid contract; (2) performance by him; (3) breach of the contract by Weleba; and (4) damages resulting from the breach. *See Velvet Snout, LLC v. Sharp*, 441 S.W.3d 448, 451 (Tex. App.—El Paso 2014, no pet.). For money had and received, Prince was required to prove that Weleba held money and that the money belonged to Prince in equity and good conscience. *See Norhill Energy LLC v. McDaniel*, 517 S.W.3d 910, 917 (Tex. App.—Fort Worth 2017, pet. denied) (citing

---

[12]While Prince filed a hybrid motion for summary judgment, he sought traditional summary judgment only on his claims for breach of contract and money had and received. Prince's no-evidence motion was limited to claims by Weleba "for indemnification based on [Weleba's] failure to return the $431,675.00 to [Prince] as a result of the Re[s]cission Agreement."

23

*Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015)) ("The supreme court has instructed us that a claim for money had and received is equitable in nature and thus to prevail on this action, a plaintiff need only prove that (1) the defendant holds money, and (2) the money in equity and good conscience belongs to the plaintiff."). With regard to the indemnification claim, if Weleba brought forward more than a scintilla of probative evidence that raised a genuine issue of material fact, then a no-evidence summary judgment could not properly be granted. *See Smith*, 288 S.W.3d at 424.

To defeat the traditional motion for summary judgment, Weleba was required to file a response that created a fact issue about at least one element of each of Prince's causes of action, by either identifying a fact issue in the summary judgment proof already in the record, or by attaching additional summary judgment evidence that created a fact issue. *See Bernsen v. Live Oak Ins. Agency, Inc.*, 52 S.W.3d 306, 308 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.). He could also defeat the summary judgment by creating at least a fact issue about his own affirmative defense. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *see also Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("A party raising an affirmative defense in opposition to a motion for summary judgment must either (1) present a disputed fact issue on the opposing party's failure to satisfy his own burden of proof or (2) establish at least the existence

of a fact issue on each element of his affirmative defense by summary judgment proof.").

Weleba's response stated that Prince's motion for summary judgment should be denied for "multiple reasons":

- Prince's traditional motion for summary judgment on his contract claim did not establish as a matter of law that Weleba breached any provision of the only contract in force between the parties.

- Prince's traditional motion for summary judgment on his claim for money had and received did not establish a right to judgment as a matter of law because a party cannot recover for money had and received for an issue governed by a written contract.

- Even if Prince had presented sufficient summary judgment evidence on either of those claims, both claims were barred by the applicable statutes of limitations.

- Even if the discovery rule applied, Prince did not establish that it tolled the limitations period long enough to save his claims.

- Prince should not be awarded no-evidence summary judgment because he did not properly move for no-evidence summary judgment by identifying an essential element of any claims for which there is allegedly no evidence, as required by Texas Rule of Civil Procedure 166a(i).

- Even if Prince had properly moved for no-evidence summary judgment on Weleba's counterclaim, fact issues prevent summary judgment.

On appeal, Weleba adds that, as a result of his nonsuit of his counterclaim's affirmative claims, "any issue relating to the propriety of summary judgment on those claims is now moot."

25

Weleba also objected to Prince's summary judgment evidence and attached his own declaration as summary judgment evidence. The declaration states that Weleba read Prince's affidavit attached to the summary judgment motion, in particular the statement by Prince that he "agreed that for the short term, [Weleba] could retain the $431,675 [Prince] gave him for the Membership Interests until the licensing was completed." Weleba responded that he "never entered into any such express agreement" with Prince. Further, Weleba stated that the "only contracts" between Prince and himself were the Purchase Agreement and the Rescission Agreement. He also pointed out that the Rescission Agreement contained an indemnification clause. It provided:

> In consideration of this agreement, and other agreements to be made, Buyer agrees, on his and his heirs and assigns behalf, to indemnify, save, and hold harmless from and against any and all damages Seller incurs, including without limitation, penalties, liens, costs, expenses, attorney fees, and other costs, related to or arising from this transaction.

In his declaration, Weleba stated that he had "incurred attorneys' fees, expenses, and costs related to or arising from the transaction at issue in the Rescission Agreement, including attorneys' fees, expenses and costs relating to this lawsuit." And he attested that Prince "ha[d] failed to indemnify [him] for those damages."

Both Prince's and Weleba's summary judgment evidence raised a question of material fact regarding what, if any, agreement was reached concerning the $431,675.[13]

---

[13]While on appeal Prince contends that it is "not disputed" that elements 1, 2, and 4 of his breach of contract cause of action were met, we do not agree. As Weleba

26

Therefore, Prince failed to conclusively prove the elements of his breach of contract and money had and received causes of action. *See Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999) (when a plaintiff moves for summary judgment on his own claim, he must conclusively prove all essential elements of his cause of action).

Moreover, as noted above in the discussion about Weleba's motion for summary judgment, the summary judgment evidence raised a question of material fact regarding the affirmative defense of limitations. This was also sufficient to defeat summary judgment for Prince on those two causes of action. *See Customer Ctr. of DFW Inc. v. RPAI N. Richland Hills Davis Ltd. P'ship*, No. 02-20-00189-CV, 2021 WL 2149623, at *4 (Tex. App.—Fort Worth May 27, 2021, no pet.) (mem. op.) (holding that, because appellants offered evidence sufficient to raise a fact issue on each element of their affirmative defense, summary judgment was improper).

### 2. Any issue regarding the denial of Prince's no-evidence summary judgment is moot.

With regard to the no-evidence part of Prince's motion for summary judgment, Weleba argues on appeal that the issue is moot in light of his nonsuit of his

notes in his brief, Prince's "motion does not even specify **what contractual provision** [Weleba] is alleged to have breached" or "**what contract** was allegedly breached."

counterclaim.[14] We agree. As noted above, Weleba filed a nonsuit in the trial court, wherein he nonsuited all of the "affirmative claims" made in his counterclaim, which included the claim for indemnification. The nonsuit was noted in the trial court's final judgment. Therefore, his nonsuit "moots his case" by "extinguish[ing] a case or controversy." *Morath v. Lewis*, 601 S.W.3d 785, 788 (Tex. 2020) (first quoting *Hous. Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 157 (Tex. 2007); and then quoting *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 100 (Tex. 2006)); *see Leon Springs Gas Co. v. Rest. Equip. Leasing Co.*, 961 S.W.2d 574, 578 (Tex. App.—San Antonio 1997, no pet.) (holding that the "nonsuit rendered moot the matters raised in Rudy's pending motion for partial summary judgment").

We overrule Prince's second issue.

## IV. CONCLUSION

Because neither party established a right to judgment as a matter of law, we affirm the order denying Prince's summary judgment motion and reverse the order granting Weleba's motion and supplemental motion for summary judgment. We remand this case for further proceedings consistent with this opinion.

---

[14]In his reply brief, Prince does not respond to the mootness argument. In addition, it is arguable that Prince abandoned *any* argument about the propriety of denying the no-evidence summary judgment motion as he failed to address it in its entirety in his brief. *See* Tex. R. App. P. 38.1(i).

28

/s Dana Womack

Dana Womack
Justice

Delivered:  October 5, 2023